[L. A. No. 21672. In Bank. Feb. 21, 1952.]

LOUIS SCHNIDER et al., Appellants, v. STATE OF CALIFORNIA, Respondent.

Reuben Rosensweig and Irl D. Brett for Appellants.

Robert E. Reed, George C. Hadley, John N. McLaurin, Herbert J. Williams, Harry S. Fenton and Albert J. Day for Respondent.

GIBSON, C. J.—This inverse condemnation proceeding was brought by plaintiffs to recover damages for the taking of claimed rights of access to Olympic Boulevard, a state highway in the city of Santa Monica. In 1945 the California Highway Commission adopted a resolution authorizing the reconstruction of a portion of the boulevard as a limited freeway. The area here involved as it appeared at that time is shown by the accompanying map.

In 1947 plaintiffs purchased Lots 127 and 130, which did not abut on the boulevard until it was subsequently widened for use as a freeway. Prior to that time Lots 128 and 129, which were acquired by the state from other persons for highway purposes, intervened between plaintiff's property and the boulevard. The construction of the freeway was commenced about March 1, 1948, and sometime thereafter the state erected a fence along the common boundary line between plaintiffs' property and the freeway, thereby barring direct access from one to the other.

Plaintiffs obtained a judgment for damages due to changes in the grade, which included compensation for loss of access to Olympic Boulevard by way of cross streets bordering upon

plaintiffs' lots. The trial court, however, refused to allow plaintiffs compensation for the loss of an asserted right of *direct* access, and they have appealed from the portion of the judgment which denied them such recovery.

It is clear from the record that there was no right of direct access to Olympic Boulevard from Lots 127 and 130 when the resolution of the California Highway Commission was adopted. It is also clear that such a right did not arise upon the acquisition of the intervening property by the state for highway purposes. Accordingly, we are not concerned with a situation in which the owner of property abutting upon a conventional highway is deprived of direct access when it is rebuilt as a freeway. Nor does this case involve the question of what rights of access plaintiffs would have acquired if the boulevard had been widened and rebuilt as a conventional highway. The sole issue before us is whether plaintiffs acquired a right of direct access as a result of the construction of the freeway.

Freeways are designed to provide rapid transit for through traffic, uninterrupted by vehicles or pedestrians from private roads and intersecting streets, and the word "freeway," as used in the Streets and Highways Code, means a highway with respect to which owners of abutting lands have no rights of access or only limited rights of access. (Sts & Hy. Code, § 23.5.) The Streets and Highways Code furnishes ample authorization for the construction of a freeway on land where no public way existed before without creating rights of direct access in favor of other property which, prior to the new construction, had no such rights of access. (Sts. & Hy. Code, §§ 100.1, 100.2, 100.3.) The provision of section 100.3 that a declaration creating a freeway "shall not affect private property rights of access, and any such rights taken or damaged within the meaning of Article I, section 14, of the State Constitution . . . shall be acquired in a manner provided by law," plainly refers to rights of access which exist prior to the establishment of the freeway and not to claimed rights which have had no previous existence and which could come into being, if at all, only by virtue of the new construction.

Where a property owner has no right of direct access to a highway before it is converted into a freeway abutting upon his property, nothing is taken from him by the failure to give him such a right when the conversion takes place. The allowance of compensation in such a case would amount

to a gift rather than payment for the destruction of a right. Some analogy may be afforded by cases holding that a property owner has no right to compensation on the basis of enhancement of value resulting from the proposed public improvement for which the property is taken or damaged. (See *United States* v. *Miller*, 317 U.S. 369, 377-380 [63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55] ; *San Diego Land etc. Co.* v. *Neale*, 78 Cal. 63, 74 [20 P. 372, 3 L.R.A. 83].)

The resolution adopted by the California Highway Commission in 1945 fully complied with the applicable provisions of the Streets and Highways Code and effectively designated Olympic Boulevard as a freeway within the meaning of section 23.5. The construction of the freeway, pursuant to the resolution, did not create new rights of access in favor of land which did not abut upon the highway as it formerly existed. Where an ordinary or conventional road is built there may be an intent to serve abutting owners, but when a freeway is established the intent is just the opposite, and a resolution creating a freeway gives adequate notice that no new rights of access will arise unless they are specifically granted. (See 3 Stanford L.Rev. [1951] 298, 300, 308.)

There is no merit to plaintiffs' contention that the resolution contains an unlawful delegation of powers by reason of the fact that the California Highway Commission authorized the Department of Public Works to acquire such rights of access as in its discretion it may determine to be feasible and necessary in order to promote the public safety and preserve the usefulness of the freeway. The resolution does not purport to give the department any powers which it did not already have. (Sts. & Hy. Code, §§ 100, 100.1, 102, 104.)

Plaintiffs' position is not aided by their offer to prove that the "newly created and widened Olympic Boulevard abutted plaintiffs' lots 127 and 130 with complete and free access to and from said lots for in excess of 30 days." The offer does not state when this 30-day period occurred, but it must have been after the adoption of the resolution. Plaintiffs make no claim that any rights of direct access existed prior to that time, and, as we have seen, no new rights of access were created by the widening of the highway as a freeway. The fact that it may have been possible for plaintiffs to pass directly from their property to the boulevard during the construction work, or at any time after the resolution was adopted and before the fence was erected, could not give them

a right to continue such use in the absence of circumstances which would form the basis of an estoppel. There is no showing that any such circumstances existed here.

The judgment is affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.