**Steve WINN and Edith Winn, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 16340.**

United States Court of Appeals Ninth Circuit.

Nov. 2, 1959.

---

Jeppesen & Jeppesen, Karl Jeppesen; Clemons, Skiles & Green, Boise, Idaho, for appellant.

Perry W. Morton, Asst. Atty. Gen., Roger P. Marquis, Hugh Nugent, Attorneys, Department of Justice, Washington, D. C., Ben Peterson, U. S. Atty., Boise, Idaho, R. Max Whittier, Asst. U. S. Atty., Pocatello, Idaho, for appellee.

Before POPE, MAGRUDER and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

The United States brought this action to take certain property belonging to appellants, invoking jurisdiction under the Act of August 1, 1888, 25 Stat. 357, 40 U.S.C.A. § 257; the Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a–258e; and the "Federal-Aid Highway Act of 1956," 70 Stat. 374, which authorizes the acquisition of land or interests in land, including the control of access thereto from adjoining land, required for the construction, reconstruction, or improvement of any section of the National System of Interstate and Defense Highways.

Appellant Winn owns a 67-acre tract of desert land about eight miles from Mountain Home and 40 miles from Boise, Idaho. As shown on the diagram below, the land is in the shape of a rectangle. Viewed from above, taking the top as north, the present highway, U. S. Highway 30, diagonally bisects the land, running generally from the upper left hand to lower right hand corner. The government took a triangular plot of about 2.3 acres from the upper right hand corner of the land for construction and improve-

ment of Idaho Highway Project I–3022 (7), a section of the National System of Interstate and Defense Highways. The new highway (the Interstate) will be roughly 2000 feet from Highway 30 and will run generally parallel therewith.

(Shaded area is land taken.)

Appellants own W½, NW¼, Sec. 36,
Twp. 2S., R. 5E., B.M.

Appellants will have a frontage of 650 feet along the Interstate. However, it will be a "limited-access" highway and appellants will have no access to it from their land. Highway 30 will continue to exist unchanged across appellants' property. East of their property toward Mountain Home, appellants will have to travel about 4.8 miles along Highway 30 to reach the nearest interchange giving access to the Interstate. In the other direction, towards Boise, appellants will have to travel about 2.3 miles on Highway 30 and then about six miles over a dirt road to reach the Interstate interchange and Boise. Highway 30 will be obliterated between appellants' land and Boise where it and the Interstate intersect. It appears that the quickest and easiest route to Boise will be to go 4.8 miles in the opposite direction toward Mountain Home to the Interstate interchange, then along the Interstate to Boise. This will add about ten miles to a present distance of 35 or 40 miles.

Adjoining U. S. Highway 30, which presently runs through the land, appellants operate the "Rock Shop" where, for the past five years, they have earned their livelihood selling rocks, trinkets and souvenirs to the public. Appellant contends that the opening of the Interstate will divert the through traffic upon which appellants' business depends for customers, and the business will become virtually worthless unless the public traveling the Interstate is willing to go miles out of their way to purchase appellants' rocks, trinkets and souvenirs.

A government witness testified without contradiction that the highest and best use of the 2.38 acres of sagebrush land taken was dry land grazing. He further testified the land was worth about $100. A witness for appellant testified the land was worth about $85. The jury also viewed the premises, and found the fair market value of the property taken to be $100.

Appellants think this award inadequate. They make thirteen specific assignments of error, principally relating to evidence excluded by the trial court and instructions given or refused. In sum, appellants contend (1) the trial court should have allowed the jury to consider the effect of the building of the new highway on appellants' business and (2) the trial court should have allowed the jury to consider the damage suffered by appellants because of loss of access.[1]

---

1. During the trial, the Court, in the presence of the jury, said to appellants' counsel:

"So as to make this clear to you I will say that the amount of damage that will be allowed will be the value of this tract of land that is being taken without regard to the fact that the freeway is being built. In other words, the Court cannot allow you any damages because the road is being built farther away from the defendant's property. The United States Law under which this freeway is being built provides that there is to be no gas stations or other places of business along the freeway where it is the duty to build an access road. * * * He couldn't move them over to the highway and have access from the highway to the buildings, and he couldn't require the government to build an access road from the highway to his property. So the only thing I can submit to the jury is the value of this tract of land cut off from this place, what damage it does to the place, this small tract from the out-side corner. I think I have made that clear."

Of the instructions to the jury, only the following two are of concern on this appeal:

"The fact that the relocation of the Interstate Highway may deprive the defendant here of profits incidental to his business is not an element of damages. The Government in the exercise of its lawful Governmental powers retains power to relocate highways within the State.

\* \* \* \* \*

"The owner of property abutting on a highway has a special and peculiar right in such highway not common to other citizens. That right is a property right appurtenant to his land and furnishes him the means of getting to and from his property, known in law as a right of access, and is a right which cannot be taken or materially interfered with by the State without payment of just compensation.

"This instruction does not apply to the new highway, but just to the old highway."

■ Appellants do not explicitly contend that they should be allowed compensation for damage to their business. Such a contention would fail, as such incidental losses are not compensable and' damages therefor are traditionally denied. United States v. Petty Motor Co., 327 U.S. 372, 377–378, 66 S.Ct. 596, 90 L.Ed. 729; Mitchell v. United States, 1925, 267 U.S. 341, 345, 45 S.Ct. 293, 69 L.Ed. 644; Comment, 67 Yale Law Journal 61 (1957).

What appellants apparently seek are severance damages. In United States v. Miller, 1942, 317 U.S. 369, 375–376, 63 S.Ct. 276, 281, 87 L.Ed. 336, the Supreme Court said:

"Courts have had to adopt working rules in order to do substantial justice in eminent domain proceedings. One of these is that a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it.

"This has begotten subsidiary rules. If only a portion of a single tract is taken the owner's compensation for that taking includes any element of value arising out of the relation of the part taken to the entire tract. Such damage is often, though somewhat loosely, spoken of as severance damage."

In a footnote to the latter paragraph, the Supreme Court cited among other cases, United States v. Grizzard, 1911, 219 U.S. 180, 31 S.Ct. 162, 55 L.Ed. 165, on which appellants heavily rely. In Grizzard, the government erected a series of locks and dams on Tates Creek, with the result that waters of the creek backed up and flooded a strip of Grizzard's farm and destroyed his access to the existing Tates Creek pike. The trial court's allowance of damages for both the land taken and for destruction of the easement of access was affirmed.

The "loss of access" problems presented here will be considered below. With respect to their tacit claim for severance damages, appellants paraphrase the following from Grizzard, 219 U.S. at 183, 31 S.Ct. at page 163:

"Whenever there has been an actual physical taking of part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing, of course, injury due to the use to which the part appropriated is to be devoted."

Based upon this and similar statements in Grizzard, appellants urge that they should have been allowed to introduce evidence as to the before and after value of their land, such evidence to take into account the damage to their business. The trial Court consistently ruled adversely to appellants and sustained the government's objections to such offers.

■ Appellants have not suffered damage "arising out of the relation of the part taken to the entire tract." United States v. Miller, supra. It appears that some 14 acres in the middle of the 67-acre tract are improved and devoted to commercial use or under a contract of sale. This portion of the tract, on which the Rock Shop is situate, bears neither physical nor functional relation to the 2.3 acres of sagebrush land which were taken. The Grizzard case is clearly distinguishable from the instant case.

The only other two cases cited by appellants on this point also involve clearly distinguishable situations. In Stephenson Brick Co. v. United States ex rel. and to Use of Tennessee Valley Authority, 5 Cir., 1940, 110 F.2d 360, 361, the "land taken [was] a part of a larger tract which at the time of taking was used as a unit for a brick manufacturing plant" and "the severance of the part taken did destroy the usefulness and value of the plant." And in Puget Sound Power & Light Co. v. City of Puyallup, 9 Cir., 1931, 51 F.2d 688, the part taken was an "integral part" of a large generating and distributing system. Appellants' land was not being put to any unitary or integrated use. It appears that the high-

est and best use of the land taken is dry land grazing, which bears no demonstrable relation to rock vending. See Baetjer v. United States, 1 Cir., 1944, 143 F. 2d 391; United States v. Honolulu Plantation Co., 9 Cir., 1950, 182 F.2d 172; West Virginia Pulp & Paper Co. v. United States, 4 Cir., 1952, 200 F.2d 100.

■ Appellants further contend that the residue of their land will suffer "injury due to the use to which the part appropriated is to be devoted." United States v. Grizzard, supra. We do not agree.

"The intended use of appellant's taken land for something such as a location for large gasoline tanks or ammunition storage in the project, adjoining their residential remainder, will sufficiently illustrate what might with adequate certainty constitute a direct and identifiable element of depreciation so as to afford a possible basis for proof and recovery. Cf. West Virginia Pulp & Paper Co. v. United States, 4 Cir., 200 F.2d 100." Boyd v. United States, 8 Cir., 1955, 222 F.2d 493, 495.

There is nothing to show that the Interstate as such will contribute any "direct and identifiable element of depreciation" to the residue of their property. Boyd v. United States, 8 Cir., 1955, 222 F.2d 493, 495. Whatever damage they may suffer results from neither the taking of the land nor the use to which it is to be put, but from the Interstate project as a whole and the consequent diversion of traffic. Construction of a strip of a highway on the land taken here is not such a use as to cause injury to the remainder. Appellants' claim is essentially one for business loss and is not compensable. Mitchell v. United States, 1925, 267 U.S. 341, 45 S.Ct. 293, 69 L.Ed. 644; see Southern Counties Gas Co. of California v. United States, Ct.Cl.1958, 157 F.Supp. 934, 935.

■ Lastly, appellants phrase their claim in terms of "loss of access," citing Hughes v. State, 80 Idaho 286, 328 P.2d 397; State ex rel. Rich v. Dunlick, Inc., 77 Idaho 45, 286 P.2d 1112. An examination of these cases shows that in each an existing access to an existing road was damaged or destroyed by the new construction. Such is not the case in the instant action. The appellants will have the same access to Highway 30 after the Interstate is constructed as they had before.

The government does not contend that destruction of existing access is not compensable, Cravens v. United States, D.C. W.D.Ark.1958, 163 F.Supp. 309; Schiefelbein v. United States, 8 Cir., 1942, 124 F.2d 945; but submits that none of appellants' access rights have been destroyed.

Although Highway 30 will be obliterated some distance from appellants' land toward Boise, it will remain unchanged toward Mountain Home, and the "village market, church, and school" (United States v. Grizzard, supra) may be reached the same as they are reached now. It is true that appellants will have to travel ten miles farther to reach Boise and points west, but there is nothing to show that any inconvenience in reaching Boise and other points in that direction reduces the market value of their property. See Ralph v. Hazen, 1937, 68 App.D.C. 55, 93 F.2d 68; State of Washington v. United States, 9 Cir., 1954, 214 F.2d 33, 42. Even though the total distance be greater, for all that appears the route to Boise over the Interstate may be faster than the present route over Highway 30, which from the record appears to be a two-lane surfaced road.

■■ Appellants also raise a question with respect to access to the new highway. Although appellants will have a frontage along the Interstate, they will be given no access to it.[2] We do not think they have any such right of access.

2. In this matter appellants' position is no different than if the Interstate went along the boundary of their property without

actually taking any of their land for the new highway or was located a mile away from their property.

**288**

The Federal-Aid Highway Act of 1956 clearly contemplates the "free flow of traffic on the Interstate System." 70 Stat. 374, § 112, 383–384. If every abutting landowner were given access to the Interstate, the free flow of traffic would be impeded and the object of the Interstate System frustrated. The purpose of the Interstate is to facilitate the movement of traffic, not to serve abutting landowners.[3] The Fifth Amendment obliges the government to pay only for what it takes, not for what it may decline to give.

We find no error in either the rulings or instructions of the trial court. The judgment is affirmed.

---

3. With respect to the question of access to limited-access highways, see Schnider v. State, 1952, 38 Cal.2d 439, 241 P.2d 1, 43 A.L.R.2d 1068; People v. Thomas, 1952, 108 Cal.App.2d 832, 239 P.2d 914; City of Los Angeles v. Geiger, 1949, 94 Cal.App.2d 180, 210 P.2d 717; State, By and Through State Highway Com'n v. Burk, 1954, 200 Ore. 211, 265 P.2d 783; State v. Calkins, 1957, 50 Wash.2d 716, 314 P.2d 449; Carazalla v. State of Wisconsin, 1955, 269 Wis. 593, 70 N.W.2d 208, 71 N.W.2d 276; State ex rel. State Highway Commission v. Clevenger, 1956, 365 Mo. 970, 291 S.W.2d 57; Smick v. Commonwealth, Ky.App.1954, 268 S.W.2d 424; Wilkie Cunnyngham, The Limited-Access Highway from a Lawyer's Viewpoint, 13 Mo.L.Rev. 19, 31–32 (1948); Freeways and the Rights of Abutting Owners, 3 Stanford L.Rev. 298, 299 (1951); Owen Clarke, The Limited-Access Highway, 27 Wash.L.Rev. 111, 116 (1952).