[Civ. No. 19540. First Dist., Div. One. July 19, 1961.]

LILLIAN R. DANDINI, Appellant, v. J. EDWARD
JOHNSON et al., Respondents.

Emanuel P. Razeto and M. J. Rankin for Appellant.

Robert H. Johnson for Respondents.

WOOD (Fred B.), J. pro tem.*—This action, instituted by plaintiff to quiet title to certain real property, resulted in a judgment determining that defendants own an undivided one-half interest in the property and that plaintiff owns the other undivided one-half interest therein.[1]

Plaintiff claims that defendants acquired and hold their one-half interest solely as security for the payment of attorney fees and subject to a life estate owned by plaintiff.[2]

The half interest in question, plaintiff received from her mother by will; the other half, from the same source, as trustee for her sister Emma Remillard.

In 1935, plaintiff by a deed of gift conveyed her undivided half interest to her husband, A. O. Dandini, with certain reservations in favor of herself and her sister.

The significant portions of the deed read as follows:

"THIS INDENTURE, made this 28th day of March, A.D. 1935 between Lillian R. Dandini (formerly Lillian Remillard), the party of the first part, and A. O. Dandini, the party of the second part.

"WITNESSETH: That the said party of the first part, for and in consideration of the love and affection which the said party of the first part has and bears unto the said party of the second part, does by these presents give, grant, alien and confirm unto the said party of the second part, and to his heirs and assigns forever, all of the right, title and interest of the party of the first part in and to all that certain lot, piece or parcel of land, situate, lying and being in the County of Santa Clara, State of California, and bounded and described as follows, to wit:

". . . . [Description.]

"*RESERVING, however, to the party of the first part, and to Emma Remillard, the sister of the party of the first part, the right to use and occupy said lands during the terms of their respective natural lives.*

---

[1]The judgment also made a monetary award in defendants' favor but plaintiff has abandoned that portion of her appeal.

[2]In 1956, after most of the events here involved, plaintiff acquired the latter half interest in her own right upon the death of her sister.

*Assigned by Chairman of Judicial Council.

*"TOGETHER with* all and singular, the tenements, hereditaments and appurtenances thereunto belonging, or in anywise appertaining, and the reversion and reversions, remainder and remainders, *rents, issues and profits thereof.*

"TO HAVE AND TO HOLD, all and singular the said premises, together with the appurtenances, unto the said party of the second part, his heirs and assigns forever." (Emphasis added.)

Plaintiff contends the reservation was clearly of a life estate. Defendants do not agree. The trial court found that plaintiff conveyed the land "including the rents, issues and profits, to A. O. Dandini, then her husband, reserving a right to herself and her sister to use and occupy said lands during the terms of their respective lives, but it is not true that said reservation was, or was intended, to reserve to plaintiff and cross-defendant the exclusive right to use and occupy the same, or to constitute a life estate therein." [Finding VI.]

From a mere reading of the deed it is not clear precisely what type of right of use and occupancy the parties meant by the words employed. Judicial precedents do not help greatly. In *Woman's Home & Foreign Missionary Society* v. *Bank of America,* 15 Cal.App.2d 682, 683 [59 P.2d 1060], a reservation of " 'the free use and occupancy of the said premises as a residence for [the grantor] so long as she may live' " was treated as the reservation of a life estate. In *Le Breton* v. *Cook,* 107 Cal. 410, 417 [40 P. 552], a will vested all of the property of the estate in trustees and then directed "the trustees to deliver . . . the possession of" the family residence to a sister, the sister " 'to be allowed to occupy and use [the same] until her death, free of rent.' " These words did not create a life estate but they did serve to give the sister a right of free use of the property which was protected by the decree as modified by the reviewing court.

 In our case, the words of reservation do not speak in terms of a "life estate," nor do they expressly reserve a right to exclusive possession. In addition, there is an express declaration that the grantee is to have the "rents, issues and profits" of the property, some indication that he is not a remainderman and will immediately enjoy the use of the property. There is here, we think, sufficient uncertainty and ambiguity of expression to allow a court to look to extrinsic evidence, as the trial court did, in search of the intent of the parties to the deed. Under such circumstances extrinsic evidence is admissible. (*Leboire* v. *Royce,* 53 Cal.2d 659, 666-

667 [349 P.2d 513]; *Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 523 [297 P.2d 428]; *Schmidt* v. *Macco Construction Co.*, 119 Cal.App.2d 717, 732 [260 P.2d 230]; *MacIntyre* v. *Angel*, 109 Cal.App.2d 425, 429 [240 P.2d 1047]; and authorities cited in each.)

Plaintiff contends that extrinsic evidence can not be used as an aid to the interpretation of a deed. She *is* mistaken. The very case she cites holds that extrinsic evidence can not be so used ''if the language of a deed is plain, certain and unambiguous.'' (*Laux* v. *Freed*, 53 Cal.2d 512, 523 [2 Cal. Rptr. 265, 348 P.2d 873].) Obviously, that is not a holding that extrinsic evidence is unavailable if the language of a deed is ambiguous and uncertain. Really, there is no fundamental difference in this respect between a deed and any other written instrument. ''The modern tendency, almost universally accepted, is to abandon the strict common-law rule of construction [of deeds]. The cardinal requirement in the construction of deeds now, as in the construction of other instruments, is that the intention of the parties as gathered from the whole instrument must govern.'' (*Basin Oil Co.* v. *City of Inglewood*, 125 Cal.App.2d 661, 663 [271 P.2d 73]. See also *Paddock* v. *Vasquez*, 122 Cal.App.2d 396, 399-400 [265 P.2d 121]; *Weber* v. *Graner*, 137 Cal.App.2d 771, 774-775 [291 P.2d 173]; *Biescar* v. *Czechoslovak-Patronat*, 145 Cal.App.2d 133, 142-143 [302 P.2d 104]; *Kraemer* v. *Kraemer*, 167 Cal.App.2d 291, 300-301 [334 P.2d 675].)

 In the Kraemer case the court made these significant observations: ''Where the language of a deed is uncertain, i.e., 'fairly susceptible of either one of two constructions contended for without doing violence to its usual and ordinary import' (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal. 2d 517, 525 [297 P.2d 428]), circumstances surrounding its execution and the subsequent conduct of the parties with respect thereto may be considered in order to determine their intention in consonance with the language used; to determine 'what they meant *by* what they said.' (*Barnhart Aircraft, Inc.* v. *Preston*, 212 Cal. 19, 23 [297 P. 20]; Civil Code, section 1647; *Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665]; *Van Slyke* v. *Arrowhead etc. Power Co.*, supra, 155 Cal. 675, 681 [102 P. 816]; *Poles* v. *Glass*, 136 Cal.App.2d 508, 510 [288 P.2d 986]; *Paddock* v. *Vasquez*, 122 Cal.App.2d 396 [265 P.2d 121].)'' (P. 304 of 167 Cal.App.2d.)

The following evidence supports the trial court's finding that plaintiff reserved a right to herself and her sister to use the property during their respective lives, but not an exclusive right of use nor a life estate.

Plaintiff testified upon cross-examination that she wanted the grantee, her husband, to have ownership along with her and her sister; she thought it would be nice for him to own part of the property; she did not need a half interest at the time because she felt that with her husband and her sister that was enough, it was all right for plaintiff. She also testified that her husband planted walnut trees [on about 10 of the 13 acres which comprised this property]; she thought the trees were about five years old in 1946 when the execution sale of Dandini's interest took place, which would indicate the planting occurred after the deed to Dandini was executed and delivered. There is evidence also that plaintiff told defendant Johnson that her husband was the person who planted the walnuts and the ornamental hedges around the place; also, that he made structural changes in the portion of the house which he occupied.

Shortly before the execution sale, defendant Johnson suggested to plaintiff that she bid on the property. She declined, saying she was not interested. Johnson then suggested she had a choice " 'now of whether you want the Remillard Brick Company as co-owners with you in this property or Johnson and Harmon.' " She replied, " '. . . That would suit me fine for Johnson and Harmon to own property with me.' "

Such evidence and the inferences which reasonably may be drawn therefrom support the trial court's finding and preclude a reviewing court from undertaking to disturb that finding.

In the course of time differences developed between plaintiff and her husband. In 1939 she retained defendants as attorneys to represent her interests, individually and as a stockholder in Remillard Brick Company, which in turn owned stock in the Remillard-Dandini Company. A stockholder's derivative suit was brought against A. O. Dandini by Remillard Brick Company in its own name and in the name and in behalf of Remillard-Dandini Company, resulting in a judgment in 1943 for approximately $50,000 in favor of Remillard-Dandini and a direction that attorney fees in the sum of $10,000 be paid out of anything recovered from A. O. Dandini. A transcript of judgment was promptly recorded, creating a lien in this property in favor of the judgment creditor, Remillard-Dandini Company.

In 1946, execution was levied upon the judgment debtor's interest in this property. At the sheriff's sale defendants, in the name of Remillard-Dandini, made the successful bid in the sum of $11,000, approximately the amount to which accumulated interest had augmented the $10,000 fee that had been awarded them. Remillard-Dandini assigned its interest in the certificate of sale to Remillard Brick Company and defendants Johnson and Harmon, as their interests might appear. Remillard Brick then assigned to Johnson and Harmon. Accordingly, the sheriff's deed, when issued, transferred the judgment debtor's title to defendants J. Edward Johnson and W. Glenn Harmon.

That title, as we have seen, consisted of an undivided one-half interest in the property, subject to the nonexclusive right of plaintiff and her sister to use and occupy without the payment of rent. There is substantial evidence that the interested parties intended that defendants take title as proprietors and not as security holders. The majority directors[3] of Remillard-Dandini favored making a low bid at the execution sale. They had an appraisal of $20,000 for the entire property, did not favor acquiring an undivided half interest, believed a partition suit would be necessary because plaintiff, who held the other half interest, indicated unwillingness to buy or sell. They were also confronted with the right of occupancy which plaintiff had reserved in her deed to A. O. Dandini. They were inclined at first to bid not more than $3,500; later, $5,500. Finally, they did make a bid of $7,500. Meanwhile, defendant Johnson urged plaintiff to bid $6,500 or $7,500 and thereby acquire the property for herself but she refused, saying "No, it isn't worth it." So, for her protection, as well as to create a fund from which the attorney fee could be paid, he bid $11,000 for and in behalf of Remillard-Dandini Company.

Negotiations which ensued between Johnson and Remillard-Dandini culminated in an agreement that defendants would take the property in lieu of cash, at the amount of the bid. The company then made the assignment with the intention of thereby paying the attorney fee. There is substantial evidence that plaintiff participated in these transactions and was kept fully informed and advised throughout.

Thereafter, defendants conducted themselves as proprietors,

---

[3]Plaintiff and defendant J. Edward Johnson were minority directors of Remillard-Dandini.

not as mere security holders, and plaintiff dealt with them as such. Defendants managed the walnut grove, which occupied 10 acres of this 13-acre property. The remaining 3-acre portion is devoted to buildings, grounds and gardens. Defendant Johnson testified, "[w]e have always given her [plaintiff] a free hand as relates to the garden part, the building part, and we have taken full charge of the walnut grove." He did have the main residence painted. The paint was paid for by defendants and plaintiff equally. They shared other expenses, including taxes, in like fashion. They operated this property throughout the years as a joint enterprise, sharing equally the expenses and dividing the profits and losses equally between plaintiff and the defendants respectively. The parties had been thus managing the property for a continuous period of 12 or 13 years immediately preceding the filing of the complaint herein. Such conduct is persuasive of the view that defendants took and held title as proprietors, not as mere security holders.

Plaintiff complains that defendant Johnson failed to advise her that the judgment for separate maintenance which he obtained for her became a first lien upon the property here involved. The answer is that it did not become such. It was rendered and recorded in 1946, three years after the rendition and recording of the Remillard-Dandini judgment against A. O. Dandini, hence subordinate to the lien of the latter. It happened that at one of the meetings of the board of directors of Remillard-Dandini it was reported that A. O. Dandini was willing to quitclaim this property to that company. Defendant Johnson informed the board that if such a deed were accepted it would activate a lien in favor of plaintiff herein. Accordingly, the offer was not accepted. Plaintiff was not present at that board meeting. Defendant did not later mention this incident to her, nor did he advise her that acceptance of that offer by the company would activate the lien of her judgment for separate maintenance. We do not see here a basis for complaint. Defendant Johnson as a director of Remillard-Dandini had a duty to disclose this information to the company and his fellow board members. Plaintiff as a fellow board member had no right to suppress that information. We do not see that this incident was of such a character as would, as a matter of law, constitute defendants trustees for plaintiff in the ownership and holding of the property conveyed to defendants by the sheriff's deed.

Nor did defendants make a profit, secret or otherwise, in violation of any duty to plaintiff. They paid $11,000 for an undivided one-half interest in a piece of property the whole of which was valued at $20,000 by an independent appraiser. The fact that in the course of time it has increased in value does not relate back to the date of acquisition and infect that purchase with the taint of unjust enrichment.

In view of the finding of the trial court, based upon substantial evidence, that in respect to these matters the defendants kept plaintiff fully advised, affirmance of the judgment seems clearly indicated except for the failure of the judgment to protect and declare the nonexclusive right of use and occupancy which plaintiff reserved in her deed of 1935 to Dandini. That omission can be corrected by appropriately modifying the judgment and then affirming it.

The conclusions of law are modified as follows:

In paragraph II of the conclusions of law, after "herein" at the end of the paragraph, insert a comma and the following: "subject to the nonexclusive right of plaintiff to use and occupy said property during her lifetime, as described in paragraph VI of the Findings of Fact herein."

The judgment is modified as follows:

In paragraph 2 of the judgment, make the following inserts:

(1) After "also hereinafter described" insert a comma and the words "subject to the nonexclusive right of plaintiff to use and occupy said property during her lifetime, as described in paragraph VI of the Findings of Fact herein."

(2) After "without any right whatever" insert "save only for said reserved nonexclusive right of use and occupancy."

(3) After "and occupancy incidental to cotenancy" insert "and said reserved nonexclusive right of use and occupancy."

(4) After "mutual rights incidental to said cotenancy" insert "and said reserved nonexclusive right of use and occupancy."

As thus modified, the judgment is affirmed. Respondents are to recover costs on appeal.

Tobriner, Acting P. J., and Duniway, J., concurred.