[Civ. No. 29010. Second Dist., Div. Three. Jan. 27, 1967.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Plaintiff and Appellant, v. NORMAN L. SCHEINMAN et al., Defendants and Respondents.

Harry S. Fenton, R. B. Pegram, Richard L. Franck, H. Dean Stillwagon and Robert W. Vidor for Plaintiff and Appellant.

Thomas G. Baggot, E. A. Radford and B. G. Warren for Defendants and Respondents.

FORD, P. J.—On this appeal from a judgment in an action in eminent domain the question to be resolved is whether the trial court properly determined that the parcel of land being condemned enjoyed legal rights of access in and to the Ventura Freeway[1] from Lewis Road. The property was located at the southeast corner of Lewis Road and the Ventura Expressway[2] in the community of Agoura and was improved with an automobile service station and a café which had been in operation since 1958.

A freeway agreement dated September 20, 1949, was entered into by and between the State of California and the County of Los Angeles. Therein it was recited that the California Highway Commission had adopted a resolution on April 18, 1946, declaring the section of State Highway VII-LA-2-C in the County of Los Angeles between Woodlake Avenue in the City of Los Angeles and the Los Angeles-Ventura County Line to be a freeway. In that document the county agreed and consented to the closing of county highways, the relocation of county highways, and other construction affecting county highways, all as shown by maps attached to the agreement and made a part thereof.[3] One of those maps

[1] Section 23.5, added to the Streets and Highways Code in 1939, is as follows: " 'Freeway' means a highway in respect to which the owners of abutting lands have no right or easement of access to or from their abutting lands or in respect to which such owners have only limited or restricted right or easement of access.' "

[2] Section 257, added to the Streets and Highways Code in 1959, is as follows: "For the purpose of this article only [article 2 of chapter 2, which article is now entitled "The California Freeway and Expressway System"] and to distinguish between the terms 'freeway' and 'expressway,' the word 'freeway' shall mean a divided arterial highway for through traffic with full control of access and with grade separations at intersections, while the word 'expressway' shall mean an arterial highway for through traffic which may have partial control of access, but which may or may not be divided or have grade separations at intersections.' "

[3] At the time of the agreement section 100.2 of the Streets and Highways Code was as follows: "The department [Public Works] is authorized to enter into an agreement with the city council or board of supervisors having jurisdiction over the street or highway and, as may be provided in such agreement, to close any city street or county highway at or near the point of its interception with any freeway or to make provision for carrying such city street or county highway over or under or to a connection with the freeway and may do any and all work on such city street or county highway as is necessary therefor. . . . No city street, county road or other public highway of any kind shall be opened into or connected with any freeway unless and until the California Highway Commission adopts a resolution consenting to the same and fixing the terms and conditions on which such connection shall be made and the said commission may give or withhold its consent or fix such terms and conditions as in its opinion will best subserve the public interest.' "

showed that Lewis Road would be connected to the freeway on each side of the freeway.

The issue of the right of access in and to the freeway was presented to the trial court on the basis of facts as to which the parties were in agreement. On February 23, 1949, L. L. Colodny and Lillian Colodny, the predecessors in interest of the defendants Scheinman, conveyed to the State of California by a grant deed a parcel of land of which a portion is within the right of way of the Ventura Expressway. In that deed it was provided in part as follows: ''This conveyance is made for the purposes of a freeway, and the grantor hereby releases and relinquishes to the grantee any and all abutter's rights of access, appurtenant to grantor's remaining property, in and to said freeway.''

Thereafter it was determined that an adjoining parcel owned by the State of California was not necessary for highway purposes. That parcel was approximately triangular in shape, one side adjoining the freeway and one side running along Lewis Road for a short distance. On July 26, 1949, the State of California conveyed that parcel to L. L. Colodny, the deed being in part as follows: ''EXCEPTING and RESERVING unto the State of California any and all rights of ingress to or egress from the land herein conveyed over and across the Northerly and Northwesterly lines thereof.

''It is the purpose of the foregoing exception and reservation to provide that no easement of access shall attach to or be appurtenant to the property hereby conveyed by reason of the fact that some [sic] abuts upon a public highway.

''Subject to reservations, restrictions and easements of record.''

The property involved in the present action was acquired by the defendants Scheinman by grant deed from Neil M. Gudgeon and Agnes A. Gudgeon, who had entered into a lease with defendant Shell Oil Company for the use of a portion of the property for the operation of an automobile service station.

At all times prior to plaintiff's highway construction pursuant to the present proceeding, which included the closing of Lewis Road at the freeway, physical access to and from the property herein involved was by way of Lewis Road.

At the trial the position of the State of California was that by virtue of the language of the deeds set forth hereinabove

the State of California had acquired "any and all" abutter's rights of access in and to the Ventura Expressway, including access by way of Lewis Road, and that by reason of those deeds the property of the defendants Scheinman had no legal right of access in and to that expressway as of the date of valuation (August 10, 1962), or at any time prior to or since the date of valuation. The defendants Scheinman contended that the State of California did not acquire the easement of access in and to Lewis Road by virtue of the deeds upon which the State's position was based and that their property had the legal right of access in and to the expressway via Lewis Road.

The trial court found that the plaintiff State of California "never acquired the easement of reasonable access appurtenant to defendants' property along Lewis Road" and that the property of the defendants Scheinman "had legal access to the Ventura Freeway by way of Lewis Road."

The core of the controversy is the construction to be placed on the language of the Colodny deed to the State of California that "the grantor hereby releases and relinquishes to the grantee any and all abutter's rights of access, appurtenant to grantor's remaining property, in and to said freeway." That deed was dated February 23, 1949.

 "The primary object of the interpretation of a deed is to ascertain and give effect to the intention of the parties, especially that of the grantor, as it existed at the time of the execution of the instrument." (*Palos Verdes Corp.* v. *Housing Authority,* 202 Cal.App.2d 827, 835 [21 Cal.Rptr. 225].) In the present case the pertinent language of the Colodny deed is uncertain inasmuch as it is susceptible of either one of the two constructions for which the parties to this action respectively contend. Consequently, in resolving the question presented the circumstances surrounding the execution of the deed may properly be considered. (*Dandini* v. *Johnson,* 193 Cal.App.2d 815, 819 [14 Cal.Rptr. 534].)[4]

[4]The position just stated as to the consideration of surrounding circumstances also finds support in the reasoning of the concurring opinion in *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751, at page 776 [128 P.2d 665]: "Words are used in an endless variety of contexts. Their meaning is not subsequently attached to them by the reader but is formulated by the writer and can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a

■ The function of this court is set forth in *Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, wherein it was stated at page 865 [44 Cal.Rptr. 767, 402 P.2d 839] : "It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence. Accordingly, 'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]. . . .)"

■ As has been noted, the property transferred from the Colodnys to the State of California was acquired for the purposes of a freeway. But only a portion of the lot owned by the Colodnys was conveyed to the state. Under such circumstances,[5] in order to avoid any future question as to rights of direct access onto the freeway, there was a sound basis in reason and prudence for including in the deed to the State the provision that the grantor released and relinquished to the State "any and all abutter's rights of access, appurtenant to grantor's remaining property, in and to said freeway." It is to be noted that similar caution was used as to the wording of the deed of July 26, 1949, from the state to L. L. Colodny. Moreover, the freeway agreement of September 20, 1949, including the map attached thereto as exhibit B, between the State of California and the County of Los Angeles, executed after the date of the Colodny deed, shows that it was then planned that Lewis Road would connect with the freeway on each side of the freeway. At the time of the execution of the deed of February 23, 1949, the right of access existing

---

meaning that was never intended. (Cal. Code Civ. Proc., §§ 1856, 1860; see Wigmore on Evidence 3rd ed., §§ 2458-2478; 'The Theory of Legal Interpretation,' 12 Harv.L.Rev. 417, by Oliver Wendell Holmes (then Chief Justice of Massachusetts)."

[5]The situation in the present case was not like that in the inverse condemnation case of *Schnider* v. *State of California*, 38 Cal.2d 439 [241 P.2d 1, 43 A.L.R.2d 1068], upon which the State relies. In the *Schnider* case, decided three years after the execution of the Colodny deed of February 23, 1949, no portion of the plaintiffs' land was taken by the State, their land being that adjoining the property of other owners which was acquired for freeway purposes. No question as to the construction of the provisions of a deed was before the court in the *Schnider* case.

with respect to the property abutting on Lewis Road[6] was separate and distinct from any rights possessed or which might be claimed to be possessed by the Colodnys, or their successors in interest, with respect to their remaining land abutting the new freeway. (See footnote 1 of this opinion.)

It is reasonable to conclude that if there had been any intention to relinquish any right arising from the fact that the remaining parcel of land abutted on Lewis Road, such intention would have been clearly expressed in the deed.[7] The trial court's construction of the Colodny deed was correct. There was no error in making use of that construction in determining the issue of the valuation to be placed upon the property taken. (*Breidert* v. *Southern Pac. Co.*, 61 Cal.2d 659 [39 Cal.Rptr. 903, 394 P.2d 719]; *Valenta* v. *County of Los Angeles*, 61 Cal.2d 669 [39 Cal.Rptr. 909, 394 P.2d 725].)

The judgment is affirmed.

Moss, J., concurred.

COBEY, J.—I concur. In deciding whether the comprehensive language in the deed from the Colodnys to the State of California of February 23, 1949, to the effect that the grantors conveyed "any and all abuttor's rights of access" appurtenant to the grantors' remaining property in and to the Ventura Expressway,[1] shall be given full and literal effect

---

[6] "This easement consists of the right to get into the street upon which the landowner's property abuts and from there, in a reasonable manner, to the general system of public streets." (*Breidert* v. *Southern Pac. Co.*, 61 Cal.2d 659, 663 [39 Cal.Rptr. 903, 394 P.2d 719].) "Although in *Breidert* we were concerned solely with an incorporated urban area and thus held plaintiffs' right of access ran to the general system of public *streets*, we are here involved with an unincorporated area and therefore hold plaintiffs' right of access extends to both the general system of public streets and public highways." (*Valenta* v. *County of Los Angeles*, 61 Cal.2d 669, 672 [39 Cal.Rptr. 909, 394 P.2d 725].)

[7] Merely by way of illustration, it is to be noted that in the original complaint filed in this case prior to the time that the State asserted its present position, the State gave a specific description of a part of that which it sought to obtain by use of the following language: "the extinguishment of all easements of access appurtenant to the owner's remaining lands on and over Lewis Road, resulting from the closing of said Lewis Road at the freeway."

[1] It is true, as the State contends, that the basic differentiation between a freeway and an expressway of no access on the one hand as opposed to limited access on the other, was not established by statute until 1959 by the addition of Streets and Highways Code section 257. However, in this opinion the meanings set forth in that statute will be used to describe the 1949 situation for purposes of conciseness and clarity.

and that such language thereby transferred to the State the right of indirect access to said expressway via Lewis Road (which this corner parcel so conveyed also abutted), one must consider not merely this deed but also the other relevant parts of the entire transaction by which the State of California in 1949 acquired access rights to that State highway in the area involved. I refer to certain language in the July 26, 1949 deed from the State to the Colodnys and to the status of Lewis Road under the freeway agreement of September 20, 1949, between the State and the County of Los Angeles.

To me the language of the exception and reservation in the just-mentioned July 1949 deed conveying from the State to the Colodnys certain abutting property lying immediately south of the land conveyed in the above mentioned February deed is extremely pertinent. What is here excepted and reserved by the State is access ''over and across the Northerly and Northwesterly lines thereof.'' This access by its direction is impliedly only to the Ventura Expressway and does not include lateral access westerly from such property to Lewis Road.

Furthermore, this exception and reservation explicitly states that its purpose is to cut off any easement of access arising from the fact that some of the property conveyed ''abuts upon a public highway.'' Actually the corner parcel conveyed abutted upon two public highways, namely, the Ventura Expressway and Lewis Road. But, as just stated, by direction the access so excepted and reserved was impliedly only to the expressway and did not cover access to the expressway via Lewis Road.

Accordingly, if it is assumed *arguendo* that the State acquired all access rights from the property to the expressway by the February deed, it did not retain them under the July deed's exception and reservation. The statutory requirement of interpretation of this deed in favor of the State (Civ. Code, § 1069) does not compel a contrary conclusion.

Moreover, the State did not give effect to the access rights here in issue, in the September freeway agreement. As shown on one of the maps, approved by the State on June 3, 1949, which is a part of the agreement between the State and the County of Los Angeles, Lewis Road then was to connect to the Ventura Expressway on either side of it, which it apparently did until the present State highway acquisition proceedings were commenced.

Standing alone, the February deed conveyed all access rights—both direct access and indirect access via Lewis Road. But this deed did not stand alone. The other parts of the acquisition of the access rights transaction on the part of the State were the June deed and the September freeway agreement. The latter leaves the access of Lewis Road to the expressway open, and the former impliedly excepts and reserves, by geographical direction and by language, only direct access to the freeway and not, as well, indirect access by means of Lewis Road.

Taken together (see Civ. Code, §§ 1066, 1642, 1647) with Streets and Highways Code section 23.5 which provided in 1949[2] that a "freeway" could mean either a highway with no right of access from abutting land or one with limited and restricted access from such lands, the three documents conflict on the point at issue here—whether the State in 1949 acquired access rights from the property to the expressway via Lewis Road. A latent or extrinsic ambiguity was thereby created. (Cf. *Lathrop* v. *Gauger* (1954) 127 Cal.App.2d 754, 761-762 [274 P.2d 730].) Since this evidence is entirely documentary this court is not bound by the interpretation of these documents made by the trial court. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

However, under the circumstances noted, I agree with the trial court's interpretation of these documents and, accordingly, I concur in the decision of the court.

Appellant's petition for a rehearing was denied February 20, 1967, and the opinion was modified to read as printed above.

---

[2] It still so provides.