164 P.2d 1019

**BENNETT v. NATIONS.**

No. 4908.

Supreme Court of New Mexico.
Dec. 29, 1945.

Rehearing Denied Jan. 25, 1946.

Douglass K. Fitzhugh, of Hot Springs, for appellant.

Wm. A. Gillenwater, of Hot Springs, for appellee.

SADLER, Justice.

The appellee as the plaintiff below sued to enjoin obstruction by the defendant of a road, claimed to be a public road, and for damages accruing to the plaintiff by reason of such obstruction. A permanent injunction was awarded, following trial upon the merits, the court concluding there was no evidence justifying a recovery of damages. It is from the decree awarding such injunction that the defendant prosecutes this appeal. There was no cross-appeal.

The plaintiff and defendant both reside in Sierra County, New Mexico, near the small settlement of Arrey. The former owns a farm in a certain section of land about a quarter of a mile south of her home, which is located on certain other lands in the same section. For more than forty years the main road and the one principally travelled by the public up and down the Rio Grande Valley between Hot Springs and Las Palomas and on to Hatch and beyond was routed by the plaintiff's home and thence for a quarter of a mile south to where it passes her farm. This portion of the road crosses lands of the defendant. It was worked, repaired and kept up by Sierra County at County expense for many years.

Along about 1928 or between that year and 1930, U. S. Highway No. 85 was established by the public authorities as a highway down the valley, running substantially parallel to the old road and a few hundred feet west of the particular stretch of road here in question. The new highway 85 is paved and is the one now generally used by the public in north and south travel through the valley.

In the month of April, 1943, the defendant built a fence across the old road at the north boundary of his land, only a short distance south of plaintiff's home. The fence prevents passage by the plaintiff over the portion of the road between her home and farm and also obstructs passage generally by the public over that portion of the road. Denied the use of this portion of the old road, in order to travel between her farm and her home, it is necessary for the plaintiff to proceed by a circuitous route for more than a mile upon an unimproved country road upon which there is, at least, one dangerous curve and then cross over privately owned lands for a considerable distance after leaving such road.

Until the defendant obstructed the old road by building a fence across it, the plaintiff made use of it continuously in travelling to and from her farm, and the public, more especially people living in the settlement of Arrey, used the road and the portion thereof in question from time to time for north and south travel through the valley. In addition to such inconveniences as may be occasioned to the people of Arrey and the public in general through stoppage of travel along the road by defendant's fence across it, the plaintiff is

especially inconvenienced and injured through being denied passage from home to farm and return except by use of the much longer, unimproved and dangerous way above mentioned, in the use of which she is required to pass for a considerable distance over privately owned lands belonging to others.

The old road across which defendant has placed a fence is definitely located and established on the ground and its place of entrance into and departure from defendant's land and its line or route through the same, as well as its dimensions as to length and width, all are definitely and with certainty located and established upon the ground through use of the road and its maintenance by the public for many years. The obstructions placed across it, as foresaid, consist of wire fences and posts firmly set in the ground and securely built so as to prevent any kind of travel along the road. While the old road has been fenced across in several other places and a part of it is obstructed and covered by the waters of the Caballo Lake, it has never been regularly abandoned as a public road by the County authorities or by any public authority.

The trial court concluded from the foregoing facts that the road in question, including the portion thereof located between plaintiff's home and farm, is a public road and that defendant acted wrongfully in obstructing the same; that in addition to her right as a member of the public, generally, the plaintiff has a peculiar interest

and right in the matter of such obstruction in that it blocks her means of travel and ingress and egress to and from her farm and thus effects an injury to her additional to that suffered by the public in general.

The court further concluded that, although plaintiff had shown peculiar injury and actual damage, she had not produced sufficient evidence of the amount or extent of such damage to enable the trial court to calculate same as the basis for an award of damages. Finally, the trial court concluded that the plaintiff was entitled to a permanent injunction against defendant restraining him from maintaining his fence across or otherwise obstructing passage along the road in question.

In addition to finding the facts and drawing the conclusions above related, the trial judge dictated an opinion which he filed in the case. We quote certain portions thereof which clarify the findings and disclose the theory upon which the court acted in reaching the decision it did, as follows:

"It is fair to counsel and the Court to express the points and principles on which I arrive at this Decision.

"Unquestionably the road is a public road long since established and used as such and maintained at public expense, and since there has been no action taken by the county authorities to vacate or abandon it, it is yet a public road in spite of its general non-use for several years. Mere non-user does not cause the lands of a

public road to revert to former owners, much less to adjacent land owners.

"It being a public road the defendant is without authority to close it and the county authorities can require him to remove the obstruction or fence he has placed across the road, and any citizen, who by its closing is injured in any way different in kind from the injury suffered by the general travelling public, may also require defendant to remove the obstruction.

"If through the closing of the road, plaintiff has suffered injury in some way other than the general public has suffered, then she has a right of action to have the obstruction removed. In common with the public she has a right to travel over the road. This right can be secured to her through action brought by the county authorities, although action by her on this score alone is not authorized. But in addition to her right as one of the public, plaintiff has a peculiar interest and right which is invaded. She operates a farm and lives some distance from it. She uses this road, which runs by her home and her farm, as her means of travel from her home to her farm and for return. It is her only convenient means of ingress and egress to and from her farm. With this way obstructed, she is obliged to use a route several times longer, over dangerous and difficult roads, and finally through private land of others, to pass from her home to her farm and to return. This is an injury not suffered in common with the general public's injury. It is one additional and peculiar to the plaintiff.

"The defendant has no right to fence the road in the first place, and when he does so it is merely at the sufferance of the public, which, through its officials, can require him to remove the fence. The plaintiff, having suffered injury peculiar to herself, in addition to the injury which she suffers along with the public, has a right of action in herself to require removal of the fence. As defendant's trespass is continuing, injunction is plaintiff's proper remedy."

It is somewhat difficult to determine upon just what ground of error assigned the defendant really seeks a reversal. After assigning twenty-four errors, he presents his argument under two points only, the first of which is, in substance, that the court erred in rendering judgment for the plaintiff, with this preliminary explanation following immediately a statement of Point 1, to-wit:

"All assignments of Error can be properly presented under this one point, and will be so argued. However, counsel for appellant believes that, for emphasis one proposition should, as it will, be argued hereafter under Point II."

It may well be imagined what a wide range, in argument, the effort to assemble twenty-four separate errors, or the substance of them, under two points, would take. The result is that many of them, indeed most of them, are not treated at all and, hence, are abandoned and others so casually referred to as to amount to abandonment, thus suggesting that many

were assigned in the first instance out of an abundance of caution without any decision that they should ultimately be presented here. Carefully analyzed, however, the defendant's chief reliance seems to be, first, upon the claim that the plaintiff was without right to maintain the suit because showing no special injury or damage apart from that suffered by the public generally and by him as a member thereof; and, next, that the trial court decided the case on a theory different from that presented by the complaint filed in the lower court. We shall consider these claims of error in the order named.

In the case of Mandell v. Board of Commissioners, 44 N.M. 109, 99 P.2d 108, 110, we took note of the rule obtaining generally that some special or peculiar damage must result to a complaining party before he will be permitted to become movant in proceedings to compel removal of an obstruction in a public highway. Among other things we said:

"A mere inconvenience resulting from the closing of a street when another reasonable though perhaps not equally accessible approach remains, does not give rise to a legal right in one so inconvenienced, and courts do not look with favor upon claims based upon such grounds. Long v. Wilson, 119 Iowa 267, 93 N.W. 282, 60 L.R.A. 720, 97 Am.St.Rep. 315. Proof of some special or peculiar damage to the claimant, though not an abutting owner, under many authorities will support damages. Denver Union Terminal R. Co. v. Glodt, 67 Colo. 115, 186 P. 904; Hill v. Kimball, 269 Ill. 398, 110 N.E. 18; Park City Yacht Club v. Bridgeport, 85 Conn. 366, 82 A. 1035, 39 L.R.A.,N.S., 478. But the damage suffered must be substantially different in kind, and not merely in degree, from that suffered by the public in general."

Our decision in the Mandell case leaves open, however, just what is and what is not that special or peculiar damage which will warrant suit by a private suitor as distinguished from a public authority. The trial judge found as a fact that the plaintiff was compelled to travel a much greater distance over a circuitous and hazardous route at great inconvenience and with attendant danger by reason of the challenged obstruction. He concluded therefrom that the plaintiff had suffered a special damage which would authorize her to sue. We think the better reasoning supports his conclusion although the authorities are not uniform on the subject. In 25 Am.Jur. 611, § 318, under "Highways," the text says:

"Many courts, however, have adopted the rule that a property owner is specially injured by an obstruction which materially interferes with or substantially impairs his right of access, at least if the value of his property is thereby depreciated. This is often held to be true even though the obstruction is at some distance from such property, and the means of ingress and egress is not completely cut off."

See also annotation, 11 Ann.Cas. 287, 290, 291; Martin v. Marks, 154 Ind. 549, 57

N.E. 249; Wakeman v. Wilbur, 147 N.Y. 657, 42 N.E. 341; Young v. Rothrock, 121 Iowa 588, 96 N.W. 1105; Ryerson v. Morris Canal & Banking Co., 69 N.J.L. 505, 55 A. 98.

We approve the statement of the rule given by the Supreme Court of Iowa in Young v. Rothrock, supra [121 Iowa 588, 96 N.W. 1107], as follows:

"The only other point involved is the right of plaintiff to enjoin the nuisance. It is said that he has no other interest than that of the general public, and that for that reason he cannot maintain the action. It is admitted, of course, that plaintiff must show he suffers some special damage distinct from that of the general public. The fact, however, that others sustain like damages is not controlling. The test is, does plaintiff suffer damage distinct from that of the general public? Park v. [Chicago & S. W.] R. R. Co., 43 Iowa 636. If, then, plaintiff has shown that the street which was obstructed led directly to his premises, and that the obstruction interfered with his access thereto, this is a sufficient showing of special damages to authorize him to maintain the suit. There is no difficulty with the rule, although its application is not always easy. Plaintiff has shown that, if deprived of the use of First street, he is compelled to go several blocks out of his way to reach the premises owned by him, which abut on the street, and are in the same block as defendants' icehouse, and that First street gives him the only reasonable access to his property. This is a sufficient basis for his action. Hill v. Hoffman, Tenn.Ch.App., 58 S.W. 929; Callanan v. Gilman, supra [107 N.Y. 360, 14 N.E. 264, 1 Am.St.Rep. 831]; Dairy v. [Iowa Cent.] R. R. Co., 113 Iowa [716], 719, 84 N.W. 688."

In the case of Tomlin v. Town of Las Cruces, 38 N.M. 247, 31 P.2d 258, 97 A.L.R. 185, where the right of plaintiff as a private citizen to maintain a suit to enjoin removal of signs placed by highway commission was denied, we recognized the right of a private individual suffering special injury from a public nuisance, such as obstructions placed in highway, to maintain a suit in equity for the removal thereof.

While the appellant devotes some argument to the question of the right of a nonabutting owner, even though specially damaged, to maintain suit for injunctive relief against an obstruction, we see no place for such argument in this case in view of the court's finding that the plaintiff is an abutting owner. It is worth noting, however, that we commented in Mandell v. Board of Commissioners, supra, touching this subject, as follows:

"Proof of some special or peculiar damage to the claimant, though not an abutting owner, under many authorities will support damages."

The incidental argument is made that the construction of the new north-south paved highway No. 85 and its general use by the public thereafter for travel north and south through the valley amounted to an abandonment of the old highway,

thus licensing the defendant to place a fence across its route through his lands. The argument is not seriously urged and cannot be sustained. It is admitted that no formal action by public authority abandoning this portion of the old road had ever been taken and there was testimony that it was still in use by the plaintiff and the people of the little settlement of Arrey in local traffic. There was no abandonment. 25 Am.Jur. 409, § 111 under "Highways"; Kelly Nail & Iron Co. v. Lawrence Furnace Co., 46 Ohio St. 544, 22 N.E. 639, 640, 5 L.R.A. 652 and case note. In the case cited, where a contention similar to that here urged was made, the court said:

"A practical difficulty is met at the outset, viz., that a majority, even a large one, cannot, in such cases, speak for or give away the rights of even a small minority.

$*$     $*$     $*$     $*$     $*$     $*$

"That the road in question had been neglected and allowed to become in bad condition, and proved impracticable of use in part, and had been substantially supplanted by another, we think can have no bearing on the case. It does not follow that right of use is lost because more convenient facilities are furnished. Nor did the fencing in of portions of the street suspend or defeat the public right. Such exclusive occupation, for the time stated, could not ripen into a right, or be taken as indicating a purpose on the part of the public.

"It appears to be well settled by the authorities that, in order to work abandonment by simple non-user of an easement, all acts of enjoyment must have totally ceased for the same length of time necessary to create the original presumption; and we hold that, where non-user by the public of a street within a city is relied upon as proving an abandonment of it, such non-user must be shown to have continued for a period of 21 years."

■ Finally, the defendant complains that the trial court erred in rendering its decree upon a ground different from that put forward in the complaint in this, that the existence of a public highway was claimed to have been acquired by dedication while the lands of defendant were a part of the public domain, of which there was no proof, whereas at the trial the ground was shifted through evidence tending to show its existence as a public road through long user and maintenance by public authority as such not confined to the period when the land over which it runs was public domain. This much may be conceded but defendant cannot complain since he joined issue in the proof on the question and even went so far as to request findings that "there is *no* road running across or traversing the land of defendant" and that "the plaintiff does not have an easement of *any* kind or right of way for passages across the lands of defendant." (Emphasis ours.) It is a little late now to complain that the existence of a highway across defendant's lands cannot be sustained because there was no proof of it while such lands were yet a part of the public domain.

It may be said in closing that the court has had to determine this case without the slightest aid from appellee's counsel who, after securing approval of a stipulation signed by opposing counsel extending his time to file brief, has not further appeared. If the matter depended on his efforts in this court, the appellee would necessarily fail. But under a record entitling her to prevail she will not be penalized for the default of her counsel.

It follows from what has been said that the judgment of the trial court should be affirmed.

It is so ordered.

MABRY, C. J., and BICKLEY, BRICE, and LUJAN, JJ., concur.