Mississippi State Highway Commission *v.* Finch.

No. 41292 October 5, 1959 114 So. 2d 673

*Simrall, Aultman & Pope,* Hattiesburg; *Matthew Harper, Jr.,* Asst. Atty. Gen., Jackson, for appellant.

*E. J. Currie, Sr., E. J. Currie, Jr.,* Hattiesburg, for appellee.

GILLESPIE, J.

The Commission filed in the County Court of Forrest County its petition for the condemnation of .55 of an acre of the Finch land for the purpose of relocating and reconstructing U. S. Highway No. 49, a part of Federal Aid Project No. F-008-2(4) near Hattiesburg, Mississippi. The petition described its powers to relocate, etc., the highway and to condemn the necessary land "including the right to provide limited access facilities where deemed necessary." In paragraph 5 it described the land sought to be condemned without reference in that paragraph to any access rights. It made the Commission's order declaring the necessity for the taking

an exhibit to the petition. This order made the plans and specifications for the project a part thereof by reference.

Prior to the taking here involved, the landowner owned about 12 acres of land lying along the northerly right of way of U. S. Highway 49, fronting about 612 feet on the business route which at that point was a one-way lane going north. This lane converged with the main north and south lanes of the highway at or near the southwest corner of Finch's property. There was a county road running north and south along the western edge of the Finch land which intersected U. S. Highway No. 49 at or near the southwest corner thereof. Up until a short time before the petition was filed, Finch had a service station on his land with two access driveways into the said business route of U. S. Highway No. 49. It is not shown when or how the Commission acquired the right of way for the highway existing at the time the petition was filed, but the Commission does not contend that it had theretofore acquired any of Finch's access rights. It follows that at the time the present petition was filed, U. S. Highway No. 49 was an existing highway and Finch's right of access was neither controlled nor limited in any way except that the Commission had the right to reasonably regulate entrances to the highway.

The petition sought to condemn .55 acre along the southerly edge of Finch's land, varying in width from about 50 feet on the southeast corner to 12 feet at the southwest corner. According to the proof, including the plans and specifications for the new construction, the land belonging to Finch sought to be condemned would be included in a service or frontage road which would be a two-way drive separated from the said business route of U. S. Highway No. 49 by a neutral strip. This service road is to be connected with the business route of U. S. Highway No. 49 at an interchange at or near the southwest corner of the Finch property where the

service road and all lanes of U. S. Highway No. 49 are connected. The service road on which Finch's property will front when the construction is completed will also connect with the business route of U. S. Highway No. 49 about 1200 feet southeast of the interchange already mentioned. It was shown by the testimony that traffic moving north on the business route would have to turn into the service road at the southeast interchange, from which point a service station on the Finch property would not be observable, in order to drive directly from the service road into the Finch property. The only other way for a motorist going north on the business route to get into the Finch property would be to use the interchange near the southwest corner of the Finch property and drive back to the Finch property. In short, the plans and specifications for the new construction show that the existing highway is to be converted into a controlled-access facility. Before the taking, Finch's property abutted the main travelled northbound lane of the Hattiesburg business route with full rights of direct access thereto, subject only to the Commission's right to reasonable regulations. After the new construction, Finch's property will abut a service or frontage road connected with the main highway only at the interchanges as stated.

The Commission contends (1) that the Commission did not condemn any of Finch's access rights; (2) that Finch should not have been allowed to show that any of his access rights were being taken, and the evidence in that regard should have been stricken; (3) that since all of Finch's evidence on damages was based on the erroneous premise that compensable access rights were being taken, all the evidence offered by Finch should have been stricken, and (4) the verdict was excessive because all of the testimony offered by Finch was incompetent for the reason stated in (3). It will be noted that all these separate contentions merge into one basic ques-

tion: Is the Commission taking any compensable access rights appurtenant to Finch's property?

The question involved has two points of inquiry: (1) Do the plans and specifications for the reconstruction of U. S. Highway No. 49 convert the highway into a controlled or limited access facility? (2) If so, is the landowner entitled to compensation for such limitation of his access rights?

As already noted, the business route of U. S. Highway No. 49 on which Finch's property abutted prior to the proposed reconstruction was a conventional, existing highway. Finch had a special right of access and user in the highway. The act under which the Commission proceeded to condemn the land in question defines a controlled-access facility. Section 2(a) of Chapter 314, Laws of 1956, is as follows:

"(a) 'Controlled-access Facility' — A highway or street especially designed for through traffic, and over, from, or to which owners or occupants of abutting land or other persons have no right or easement or only a controlled right or easement of access, light, air, or view by reason of the fact that their property abuts upon such controlled-access facility or for any other reason. Such highways or streets may be expressways or freeways open to use by all customary forms of street and highway traffic; or they may be parkways from which trucks, busses, and other commercial vehicles shall be excluded."

Subsection (g) of the same Act is as follows:

"(g) 'Service Road' or 'Local Service Road' — A highway, road or street which is auxiliary to and located on the side of another highway, road or street for service to abutting property and adjacent areas and for control of access to such other highway, road or street."

The facts as herein stated show without any question whatever that the reconstruction of the high-

way according to the plans and specifications of the Commission will in fact limit and control access to the Finch property. And without regard to the decisional law on the subject, the proposed construction will result in a controlled-access facility as defined by the quoted statute. The manifest purpose of the Commission in condemning the land in question was to convert the existing highway into a controlled-access facility.

The second point of inquiry is also resolved against the Commission by the statute under which it brought the proceeding. Section 3, Chapter 314, Laws of 1956, provides in part as follows:

"Provided, however, no existing public street or highway shall be converted into a controlled-access facility except with the consent of the owners of lands abutting said freeway or with the purchase or condemnation of the acess rights of said abutting land owners."

██ █ Our cases hold that reconstruction of a highway which renders the abutting landowners' property less accessible to the highway, or which makes the approach more inconvenient, constitutes the taking of a valuable property right which is compensable. Carney v. Mississippi State Highway Commission, 103 So. 2d 413, and cases therein cited; Muse v. Mississippi State Highway Commission, 103 So. 2d 839, and cases therein cited. In the latter case, the instructions granted Muse told the jury, in effect, that the right of direct access to the existing highway was a valuable right which was being taken by the Commission (by the construction of the service road similar to the one presently involved) and that it was the duty of the jury to award Muse compensation for the taking of the direct right of access.

██ █ The power the Commission has to regulate traffic and entrances into main highways, which may be exercised in the interests of public safety without com-

pensation, does not include the power to convert an existing highway into a controlled-access highway.

Affirmed.

Roberds, P. J., and Hall, Holmes and Ethridge, JJ., concur.