344 P.2d 1015

STATE of Arizona ex rel. Robert MORRI-
SON, Attorney General, Appellant,

v.

Raymond D. THELBERG and Lilian
Thelberg, his wife, Appellees.

No. 6713.

Supreme Court of Arizona.

Oct. 14, 1959.

Robert Morrison, Atty. Gen., Charles L.
Hardy, Asst. Atty. Gen., Jack Marks, Sp.
Asst. Atty. Gen., for appellant.

Hall, Catlin & Jones, Tucson, for appel-
lees.

PHELPS, Chief Justice.

The State of Arizona, plaintiff, brought suit to condemn for highway purposes certain land belonging to Raymond D. Thelberg and Lilian Thelberg, his wife, defendants. Judgment was rendered fixing the damages for the condemnation, and from such judgment the State of Arizona has appealed.

The facts material to a determination of the case may be stated as follows: the defendants are the owners of a parcel of property located approximately 170 feet easterly of the intersection of the Tucson-Benson Highway with Craycroft Road in Pima County. Defendants' property is situated on the north side of and abuts on the Tucson-Benson Highway. Prior to the condemnation proceedings defendants' property was in the shape of a parallelogram, the north and south boundaries were 185 feet long, the south boundary being the one that fronts on and abuts the highway, and the east and west boundaries were 308.54 feet long. The grade of the Tucson-Benson Highway was approximately 21 inches above the defendants' property and defendants had direct and unlimited access thereto. At that time the property was being used by the defendants as a motel, the principal buildings consisting of a residence and three duplex motel units.

Prior to January 17, 1957, the Tucson-Benson Highway was a conventional highway with one roadway. On January 17, 1957 the Arizona State Highway Commission adopted a resolution authorizing the widening and reconstruction of a portion of the Tucson-Benson Highway, and according to the map and construction plans attached to the resolution, the State proposed to construct a controlled-access highway with separate through roadways for east and westbound traffic. No access is to be permitted to or from these through roadways except at certain designated points. Frontage roads are to be constructed and these will run parallel to the through roadways. The frontage road in front of defendants' property will be a one-way road going west, the grade of which will be from one to approximately two and one-half feet above defendants' property. Defendants will have access to this frontage road.

Entrance to the through roadways will be effected by means of traffic interchanges. In so far as the defendants' property is concerned the nearest interchanges are at the intersections of Craycroft Road 170 feet westerly of their property and Wilmont Road approximately one mile easterly of their property. Both of these roads will remain at their present grade and the through roadways will bridge over them. At Craycroft Road the grade of the through roadways will be raised approximately 21 or 22 feet above the grade of Craycroft Road. In front of the defendants' property the grade of the westbound through roadway will be raised approximately 20 feet

above the westbound frontage road. The change of grade of the through roadways will lie within the right of way of the Tucson-Benson Highway as it existed prior to the commencement of this condemnation action. Motorists desiring to leave or enter the through roadway will do so by one-way ramps.

After construction of the controlled-access highway is completed a westbound traveler on the Tucson-Benson Highway would reach defendants' property by leaving the westbound through roadway approximately 1,400 or 1,500 feet east of Craycroft Road and driving on the ramp to the frontage road which serves the defendants' property. An eastbound traveler on the eastbound through roadway would have to drive approximately one mile easterly from the intersection of Craycroft Road with the Tucson-Benson Highway. He would cross over to the westbound through roadway and then proceed westerly to the previously mentioned ramp which would enable him to drive onto the frontage road serving the defendants' property.

A traveler leaving the defendants' property and desiring to continue to Tucson would enter the frontage road and drive westerly past the intersection of the frontage road with Craycroft Road approximately 1,700 feet until he entered a ramp leading onto the westbound through roadway. If the traveler desired to travel east toward Benson he would leave defendants' property by driving onto the frontage road and would proceed 250 or 300 feet westerly to Craycroft Road. He would then drive on Craycroft Road under the through roadways to the eastbound frontage road. He would then drive easterly on the eastbound frontage road approximately 1,400 or 1,500 feet until he reached the ramp by which he would enter the eastbound through roadway.

A barrier fence is to be constructed between the westbound frontage road and the through roadway.

In order to construct the frontage road on the north side of the highway it was necessary to acquire .24 acres of defendants' property. The State therefore condemned an irregularly-shaped strip of land averaging approximately 54 feet in depth across the south boundary of defendants' property.

The only issues before the lower court were the amounts due to defendants for the portion of the premises and the improvements thereon taken and the severance damage to the remaining property, and the impairment of access to the new highway. The court awarded $18,500 damages for the property taken by the State and *$10,750 for damages to the remaining property*. As to the $10,750 figure which represents damages to the remaining property the trial court had this to say:

"The court feels that the principal question to be decided in this case is

whether or not the defendant-owners are entitled to damages for impairment of access, or, is impairment of access compensable. If such is not the case, the court finds that the defendants' damages are in the sum of $18,500.00, but the court feels, after careful reading of the briefs, an impairment of access is compensable, and Defendants are damaged in the sum of $29,250.00."

In its appeal the State asserts that the trial court erred in awarding defendants damages in the sum of $10,750 for injury caused by an impairment of access for the following reasons: (1) the evidence did not establish that there had been an impairment of access, (2) under the evidence the defendants enjoy the same access to the Tucson-Benson Highway after the taking which they have always enjoyed, (3) the changing of grade of an existing highway does not constitute such an impairment of access as to entitle an abutting property owner to damages, (4) the control of access to a controlled-access highway does not constitute a taking or damaging of property which would entitle abutting property owners to compensation.

 There is unquestionably evidence in the record to support the finding made by the trial court that the access from the main Tucson-Benson Highway to defendants' remaining property is impaired by the construction of the improvements in the manner proposed by the State. Therefore, the sole question presented by this appeal is: does an abutting property owner's right of access to a public highway entitle him to compensation for severance damages where part of his land is taken in order to convert a conventional highway into a controlled-access highway so that access to and from his remaining property is controlled by a frontage road.

A careful study and analysis of the Arizona cases convinces us that regardless of what the law may be elsewhere this Court is committed to the legal proposition that in the absence of specific legislation to the contrary, an abutting property owner to a state highway is not entitled to damages for an invasion of his right of direct access to such highway by reason of the action of the State changing the grade of such highway in front of his property any more than he would be if the State, in the exercise of its police power, changed the route of such highway so that it completely isolated such highway from any contiguity to his lands previously contiguous thereto. The latter seems to be universally true. People v. Gianni, 130 Cal.App. 584, 20 P.2d 87, 89.

We said in State ex rel. Sullivan v. Carrow, 57 Ariz. 434, 114 P.2d 896, 898, that:

"So far as the right to change the location (of a highway) is concerned, we think there can be no question that

when the Commission, acting in a reasonable exercise of the discretion conferred upon it, determines that it is in the best interest of the public that the route of a highway be changed, it may do so, notwithstanding that the effect of such change is to seriously damage or destroy the value of property along the old line. * * *"

This Court further said in In re Forsstrom, 44 Ariz. 472, at page 492, 38 P.2d 878, at page 886, that:

"We are of the opinion that in reason and logic the reason for the rule that the grade of a street may be changed without paying compensation to the property owner for the invasion of his right of access is not that such an invasion is not a taking, or that the public has the right to deal with the street as its own regardless of the rights of the abutting property owners, but rather that the law presumes that, when the street is first laid out and the ground of the property owner taken or voluntarily given for that purpose, the compensation to which he is then entitled, and which will be given him if he desires it, pays not only for the original ground taken, but for any further taking of the easement of access which may be made necessary by subsequent changes in the grade of the street. * * *"

(The above case was later reversed but on another ground)

We again used the identical language in Grande v. Casson, 50 Ariz. 397, 72 P.2d 676, in quoting with approval from Justice Cooley in City of Pontiac v. Carter, 32 Mich. 164.

The court in State ex rel. Sullivan v. Carrow, supra, stated in effect that the above principle of law is correct but further stated that in the Carrow case the increased difficulty of access was not caused by a change in the grade on the right of way already established but by the taking of a new right of way. We could not determine from the opinion just what the court meant by this statement but we examined the findings of fact by the trial court in the Carrow case and the pertinent portion thereof says:

"That said new highway constructed by the plaintiff over, through and across said right-of-way which is sought to be condemned in this action, was constructed, and is, on a grade much higher than the level of the old highway which crossed said premises of the defendants E. M. Carrow and Edith M. Carrow; that said old highway was closed and replaced by said new highway, and by reason of the manner in which said new highway was and is constructed upon said right-of-way, ingress and egress to and from said tourist and recreational area, and to and from said new highway, was made much more difficult and incon-

venient than the outlet of defendants from said premises to the old highway; and that by reason of the construction of said new highway on said right-of-way, and by reason of the manner in which the same was constructed, said defendants will be compelled at great expense to themselves, to make extensive cuts and fills in order to have convenient access to said new highway and in order to utilize the remainder of their larger tract lying above and below said right-of-way; * * *."

The findings therefore indicate that the damages to the access to the Carrow premises was due *to the manner in which the new highway was constructed at the points of ingress and egress of the old highway to the Carrow Tourist Camp.* The court said under such circumstances the Carrows were entitled to recover and correctly so. The old road to the new highway was blocked to the extent that made it necessary for the Carrows to spend large sums of money in order to get off and onto the new highway. The principle of damnum absque injuria, upon which compensation is refused for the invasion of the right of access to a previously-established highway, was not applicable in that case for the reason that the Carrows had not been previously compensated for the new highway.

The fact that in the instant case there was a frontage road constructed in front of the defendants' property and alongside the old highway does not bring the instant case within the rule laid down in the Carrow case. Defendants have been allowed $18,500 compensation for the taking of the property on which that road is located. It, in and of itself, does not impair, in the slightest degree, defendants' right of access to the highway constructed on the old right of way. On the other hand, it is in aid of their access thereto.

There is no doubt that the remainder of defendants' property has been greatly diminished in value by reason of the elevation of the new highway on the old right of way some 22 feet above defendants' property and their access thereto greatly impaired, but under the established law in this state they cannot recover therefor. The case of Pima County v. De Concini, 79 Ariz. 154, 285 P.2d 609, is distinguishable from this case in that the land condemned and taken by the county was the thing that destroyed De Concini's access to the abutting highway. No change was made in the highway at all.

■ If the remainder of defendants' property has suffered a severance damage as a result of the action of the State in condemning and taking the south 54 feet of their premises as shown by the record, defendants are entitled under the Constitution, to recover a just compensation therefor. The evidence in the record bearing upon this subject is so confusing that

we are unable to determine either the considerations upon which witnesses based their damages or the yardstick used in arriving at the amount awarded. Consequently, the case must be reversed as to the severance damages.

In order that in the retrial of the issue the testimony of witnesses may be kept within proper confines, we will again set forth the measure of damages in such cases. It is as follows: *When only a part of the property is taken, the measure of severance damages is the difference between the market value of the property not taken before and after the taking.*

As we stated above, there can be no damages awarded for an invasion of a *direct* access to a new highway built on the old right of way. Therefore, in the instant case the severance damage to the property of defendants not taken would be the difference between its market value before and after the taking of the south 54 feet of defendants' property, assuming Thelberg still had the same direct ingress and egress to the main highway. The witnesses and the court must completely divorce their minds of the changed elevation in the new highway in the application of the above measure of damages.

Accordingly, the judgment of the trial court is affirmed as to the amount awarded for the taking of a portion of defendants' property, and reversed as to the severance

damage, with instructions to grant a new trial for the purpose of ascertaining only the severance damage, if any.

STRUCKMEYER, UDALL, JOHNSON and BERNSTEIN, JJ., concur.