384 P.2d 241

**STATE of New Mexico ex rel. STATE HIGHWAY COMMISSION of New Mexico, Petitioner-Appellant,**

**v.**

**Lee DANFELSER and Byrdis Danfelser, Defendants-Appellees.**

No. 7021.

Supreme Court of New Mexico.

Aug. 5, 1963.

**362**

Earl E. Hartley, Atty. Gen., M. W. Hamilton, Hadley Kelsey, Joseph L. Droege, Epifanio Garcia, John C. Worden, Joseph O. Walton, Special Asst. Attys. Gen., Santa Fe, for appellant.

Wilson, Ahern & Montgomery, Albuquerque, for appellees.

Hannett, Hannett & Cornish, Scott H. Mabry, Owen B. Marron, Rodey, Dickason, Sloan, Akin & Robb, W. A. Keleher and Timothy B. Keleher, Modrall, Seymour, Sperling, Roehl & Harris, Lewis R. Sutin, Albuquerque, Herman W. Atkins, Denny & Glascock, Gallup, amici curiae.

PER CURIAM.

In view of the motion for rehearing filed by appellees, supported by their brief, two exhaustive briefs filed by amici curiae, and appellant's brief in response thereto, the original opinion is withdrawn and the following substituted:

## OPINION

CARMODY, Justice.

The state appeals from a judgment in a condemnation action granting the defendants Danfelsers damages for loss of access to a highway.

The case was tried in the district court upon stipulation, from which the following appears:

The state acquired, by these condemnation proceedings, a strip of land owned by the defendants, 75 feet wide and about 770 feet long, comprising approximately 1.376 acres of land. The property taken formerly fronted upon the right-of-way of U. S. Highway 66.

Prior to the taking, there was direct access from the defendants' land to the easterly-bound traffic lanes of what is termed in the stipulation as "old U. S. Highway 66." The old highway was a four-laned road with a median divider, and there were no crossovers directly in front of defendants' property. It was stipulated that Highway 66 is now renumbered as Interstate 40 and that the condemnation was necessitated for the building of Interstate 40 and its merger with old U. S. Highway 66 at the easterly city limits of the city of Albuquerque. Interstate 40 was built somewhat to the north of defendants' property, but what was referred to as "old 66" remained substantially as it was, its being an extension of Central Avenue. However, at least at this location, it was made into a limited access road, so as to control access not only to it but to Interstate 40. The front portion of defendants' property was taken for the purpose of constructing a two-way frontage road, by which the defendants' property could connect with U. S. Highway 66 or Central Avenue on the west at an on-grade intersection, and to the east with a one-way connection ramp to reach Inter-

state 40. A chain-link fence was constructed, prohibiting traffic from entering upon the controlled-access highway except by way of the points of connection. The parties also stipulated that the defendants' land, both before and after the taking, was unimproved and that its highest and best use was potential commercial and that the market value of the lands remaining had been reduced by the loss of access directly to the main-traveled portion of old U.S. 66. It was agreed that the defendants were entitled to compensation for the land actually taken in the sum of $19,264.00, and that the defendants were entitled to $15,653.00 as compensation for drainage damages to the remaining lands; and these two items of damage were paid for by the state prior to the appeal.

In addition to the provisions of the stipulation which have been summarized above, the two concluding paragraphs of the stipulation are as follows:

"16. That the only questions remaining to be determined in this cause are questions of law as follows:

"(1) Is the depreciation in the market value of Defendants' property which has been occasioned by the loss of access directly to the main travelled portion of old U.S. 66 caused by a reasonable and valid exercise of police power and therefore non-compensable?

"(2) Does the construction of the two-way frontage road operate in complete mitigation of damages for loss of access?

"(3) Does the construction of the two-way frontage road operate in partial mitigation of damages for loss of access?

"(4) Under the facts and circumstances stipulated herein, are the damages which have been caused by the depreciation in market value of Defendants' property by reason of loss of access directly to the main travelled portion of old U.S. 66 compensable?

"17. That if damages are recoverable by Defendants occasioned by loss of access to their lands, the amount of such damages is agreed to be $43,120.00."

The trial court, based upon the stipulation, adopted the following conclusions of law:

"I.

"That the depreciation in the market value of the Defendants' property, which has been occasioned by the loss of access directly to the main travelled portion of old U.S. 66 was in no way caused by a reasonable and valid exercise of police power and therefore the damage occasioned by said loss of access is compensable.

"II.

"That the construction of the two-way frontage road does not operate to completely mitigate the damage for loss of access.

"III.

"That the construction of the two-way frontage road does operate in partial mitigation of damages for loss of access.

"IV.

"That under the facts and circumstances stipulated herein, the damages which have been caused by the depreciation in market value of Defendants' property by reason of loss of access directly to the main travelled portion of old U.S. 66 are compensable."

The judgment granted to the defendants the amounts hereinabove mentioned for the taking of the land and the drainage damage, and in addition awarded the defendants the agreed amount of $43,120.00 by reason of the loss of access. This appeal relates solely to the award of damages for the loss of access to the defendants' remaining lands.

We are thus squarely faced with the question as to whether or not, under these facts, whatever damage was occasioned by loss of access is compensable. It is of importance to note that we are not here concerned with any limitation of access to Interstate 40, because the defendants' property does not border upon it—we are only dealing with the limited question of whether the defendants are entitled to damages because their former access to Highway 66 has been taken away and a portion of their property condemned for a frontage road so as to give them entrance and exit to the road upon which they formerly fronted.

The authorities are in hopeless conflict on this subject. It would seem that this is one phase of the law upon which courts, sometimes even within the same jurisdiction, have adopted seemingly inconsistent views, and, in addition, in almost all of the cases, there are either vigorous dissents or special concurring opinions which join in the result only. There seems to be a radical difference in viewpoint among justices who have been required to rule upon the point. This conflict is so pronounced that most of the cases contain lengthy dissertations expounding the views of the author of the opinion or the dissent.

In an effort to avoid encumbering the law books to an additional extent, we propose to state the rules that are apparently followed in the jurisdictions which have determined the question, and thereafter announce our considered judgment as to what is the proper rule for the state of New Mexico, giving to the student, or those interested in the subject, some of the most outstanding authorities, texts and law review

articles, which are cited in footnotes, for such examination as they may desire.

■ The "right of access" is apparently judge-made, the exact origin of which is difficult to determine.[1] Nevertheless, it is now considered a property right and may be loosely defined as the right of ingress to and egress from the property via the abutting street or highway. Generally speaking, all of the courts recognize such a right. There is also almost complete unanimity among the courts that traffic regulations, such as no-left-turns, one-way-street restrictions, and the like, are not an interference with the abutter's right of access. In addition to this limitation, practically all of the courts at least give "lip service" to the doctrine that the right of access is not compensably damaged by the *diversion of traffic* or by *circuity of travel*. It is, however, with reference to the application of these latter two limitations that the courts seem to come to a parting of the ways. Thus, some courts have held that although the landowner is not entitled to damages for diversion of traffic, nevertheless they have

also held it proper for a witness to testify and a jury to consider that the value of the property has been decreased because the main stream of traffic no longer goes by the property involved. Other courts, on the contrary, take the view that the loss of the main stream of traffic and its effect on property values may not be considered. To us, there can be no middle ground. It is incongruous to say, on the one hand, that diversion of traffic is not a compensable item of damage, and, on the other, to allow the same to be considered as affecting values. Either the same should be considered for all purposes, or disregarded for all purposes.

Another disagreement appearing in the decisions relates to the police power of the state, some of the courts holding that the taking of access comes within the police power and is non-compensable, while others have determined that it is not within the limits of police power and must be compensated for in eminent domain. In view of our disposition of the problem, we do not feel that there need be any determination

1. 2 Nichols on Eminent Domain, 3d ed., §§ 6.4442 and 6.4443;
3 Nichols on Eminent Domain, 3d ed., §§ 10.22 and 10.221;
Jahr, Eminent Domain, ch. VIII §§ 47–65, at 68–91 (1953) ;
Elliott, Roads and Streets, §§ 297–299 at 358–363 (4th ed. 1926).
Also, helpful discussions are to be found in several law review articles or notes:
13 Mo.L.Rev. 19 (1948) ;
3 Stanford L.Rev. 298 (1950–51) ;

27 Wash.L.Rev. and St. Bar Journ. 111 (1952) ;
43 Iowa L.Rev. 258 (1957–58) ;
38 Neb.L.Rev. 407 (1959) ;
1959 Wash.U.L.Q. 310;
11 Baylor L.Rev. 149 (1959)—(As a part of this article, the author has included a hypothetical problem, clearly illustrating a comparable situation to the instant case).
56 Northwestern L.Rev. 587 (1961)

as to whether the instant case falls within or without the police power of the state.

.Still another source of conflict among the courts is the fact that some have determined that the right of access, even though interfered with, is only compensable if a portion of the property owner's land is taken. We find this reasoning somewhat difficult to follow, because if the right of access is a property right, its loss will be just as severe and should be compensable, whether a portion of the condemnee's land is taken or not. No doubt, however, the courts which so hold are doing so upon the unstated ground that to allow compensation in all cases would be so burdensome that the state would be unable to continue its

work. Be this as it may, the conclusion we reach will not require us to make such a hairline distinction.

The decisions of the courts seem to fall in three major categories:

(1) That any loss which results from being placed upon a frontage road is not to be compensated in eminent domain, whether land is taken or not.[2]

(2) That any loss resulting from being placed on a frontage road should be compensated, but the frontage road should be considered in mitigation.[3]

(3) That any loss resulting from being placed upon a frontage road should be compensated only when accompanied

**2.** Arkansas State Highway Commission v. Bingham (1960), 231 Ark. 934, 333 S.W. 2d 728;
Pennysavers Oil Co. v. State (1960), Tex. Civ.App., 334 S.W.2d 546;
Winn v. United States (9th Cir. 1959), 272 F.2d 282 (but see Mabe v. State, Footnote 3);
Selig v. State, 1961, 10 N.Y.2d 34, 217 N.Y.S.2d 33, 176 N.E.2d 59;
Darnall v. State (S.D.1961), 108 N.W.2d 201;
State ex rel. Merritt v. Linzell, 1955, 163 Ohio St. 97, 126 N.E.2d 53;
Iowa State Highway Commission v. Smith, 1957, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680.
See, also:
Nick v. State Highway Commission, 1960, ·13 Wis.2d 511, 109 N.W.2d 71, 111 N.W. ·2d 95;
Robinett v. Price (1929), 74 Utah 512, 280 P. 736;
State, by and through State Highway Com'n v. Burk, 1954, 200 Or. 211, 265 P.2d 783;

Department of Highways v. Jackson (Ky. 1957), 302 S.W.2d 373;
Hillerege v. City of Scottsbluff, 1957, 164 Neb. 560, 83 N.W.2d 76;
Holbrook v. State (Tex.1962), 355 S.W. 2d 235;
Gayton v. Department of Highways (Colo. 1962), 367 P.2d 899.
**3.** People v. Ricciardi, 1944, 23 Cal.2d 390, 144 P.2d 799;
Riddle v. State Highway Commission, 1959, 184 Kan. 603, 339 P.2d 301;
McMoran v. State, 1959, 55 Wash.2d 37, 345 P.2d 598;
Mabe v. State (1961), 83 Idaho 222, 360 P.2d 799 (but see Winn v. United States, Footnote 2);
Blount County v. McPherson, 1958, 268 ·Ala. 133, 105 So.2d 117;
Clayton County v. Billups Eastern Petroleum Co., 1961, 104 Ga.App. 778, 123 S.E.2d 187;
State v. Hollis, 1963, 93 Ariz. 200, 379 P.2d 750;
Hendrickson v. State, Minn., —— N.W.2d ——.

by a taking of land and that the existence of a frontage road should be considered in mitigation.[4]

As hereinbefore stated, the conflict among the decisions is basically concerned with whether the right of access is a limited one, or one which, in effect, gives the abutter a superior right to that of the public. If the abutter has a private easement to the highway, other than reasonable access thereto, it must have been reserved by prior deed, or have attached by virtue of statute or decision. We know of no such statute or decision granting such a preference to an abutter under the facts here present, and, from the record in this case, no such right was apparently reserved. The question, then, is, should this court, by judicial decision, grant to an abutter a greater interest in the fee of a highway than the abutter has to other land owned by the state? See, 3 Nichols on Eminent Domain, § 10.221(5). From a policy standpoint, we see no reason why the state's ownership of the fee is not paramount to any claimed servitude occurring merely by virtue of fortunate location.

It is asserted that certain prior decisions of this court are controlling.[5] We cannot agree. Without extending this opinion unduly, we observe that the New Mexican Railroad Company case and the Bennett case are clearly distinguishable, because, in each, there was a total deprivation of access and failure to provide reasonable access to the general highway system. Weatherly dealt merely with a procedural question and is in no sense controlling here, and Harris related to a change of grade as it affected access and is not in point under the facts in this case. With regard to Sullivan v. Wilson, that decision requires that we give full constitutional scope to the Access Condemnation Statute of 1957,[6] and this is exactly what we are attempting to do in this decision.

█ It is vigorously urged that the Access Condemnation Statute is a mandatory provision of our law. With such a construction we disagree, believing that the statute was merely enabling legislation, designed to permit the highway commission to meet

4.  State ex rel. Morrison v. Thelberg, 1960, 87 Ariz. 318, 350 P.2d 988 (but compare prior opinion at 86 Ariz. 263, 344 P.2d 1015);
State ex rel. State Highway Commission v. Lynch (Mo.1956), 297 S.W.2d 400;
Mississippi State Highway Commission v. Finch, 1959, 237 Miss. 314, 114 So.2d 673.
5.  New Mexican Railroad Co. v. Hendricks, 1892, 6 N.M. 611, 30 P. 901;

Bennett v. Nations, 1945, 49 N.M. 389, 164 P.2d 1019;
State Highway Commission of N. M., State ex rel. v. Weatherly, 1960, 67 N.M. 97, 352 P.2d 1010;
Board of County Com'rs, Lincoln Co. v. Harris, 1961, 69 N.M. 315, 366 P.2d 710;
New Mexico district court three-judge decision, Sullivan v. Wilson, No. 4116 (June 20, 1959) (Not reported).
6.  Sec. 55–10–1 et seq., N.M.S.A.1953.

standards required by federal law, and that it is permissive, not mandatory.

■ We fully recognize that loss of direct access and the requirement of unreasonable circuity of travel may in some instances be compensable, even when any consideration of the flow of public travel is eliminated. Nevertheless, in the instant case, we are of the opinion that, in law, there is no unreasonable interference with appellees' access, nor do we feel that such a holding is violative of any provisions of the State or the United States Constitutions.

The fact that, as stated above, the courts of the several states are in almost hopeless confusion can in nowise affect our decision, and it is to be observed that two of our adjoining states (Texas on the east, and Arizona on the west) have arrived at seemingly diametrically opposed results.

We have held that the abutting landowner has no vested right in the flow of public travel.[7] In essence, although differently phrased, the defendants' contention is that the damage to the remaining property is caused by this loss of access to the public stream of travel. As mentioned heretofore, one of the principal differences in the decisions on this subject relates to whether compensation may be allowed for diversion of traffic, or whether diversion of traffic is a compensable item of damage in considering before-and-after values. Our decision in Slaughter squarely denies compensation for diversion of traffic, and it is partly upon this same theory that the cases cited in Footnote 2 were determined. Contrariwise, the cases cited in Footnote 3, particularly those from California, Arizona and Minnesota, permit compensation for diversion of traffic, in one way or another. In this case, to allow compensation would require an overruling of Slaughter, and this we decline to do. There is no justification under our decisions to distinguish between diverting traffic by moving a right-of-way or by building a fence. We declined to permit compensation for the diversion of traffic caused by moving a right-of-way in Slaughter, and reason and logic require a similar result here where the diversion is by reason of the fence.

■ We take the position that abutters (the defendants in this case) have a right of access to the public roads system; but it does not necessarily follow that they have a right of direct access to the main-traveled portions thereof. Circuity of travel, as long as it is not unreasonable, and any supposed loss in land value by reason of the

7. Board of County Com'rs of Santa Fe County v. Slaughter, 1945, 49 N.M. 141, 158 P.2d 859;
See, also:

Tomlin v. Town of Las Cruces, 1934, 38 N.M. 247, 31 P.2d 258, 97 A.L.R. 185; Mandell v. Board of Com'rs of Bernalillo County, 1940, 44 N.M. 109, 99 P.2d 108.

diversion of express traffic, are non-compensable.

In other words, the right of access, if it is to be termed a right, as such, is merely a right to reasonable, but not unlimited, access to and from the land.

■ Thus, for clarity, we would define the right of access as applicable to the state of New Mexico, as a right of ingress to and egress from land on an abutting street or highway and therefrom to the system of public roads, subject to reasonable traffic regulations and not affected by diversion of traffic or reasonable circuity of travel.

Defendants and amici curiae urge that paragraph 17 of the stipulation, quoted by us, requires granting judgment in the amount sought. We do not so view the stipulation, inasmuch as, in context, it followed the propositions of law upon which the parties were relying and was expressly dependent upon the court's determination of the legal issue. It was merely an agreement fixing a value if, but only if, the damage was found to be compensable. Any other construction would do violence to the real agreement of the parties and be contrary to the established rule as to the effect to be given to stipulations of the parties.[8]

We would also observe in this connection that, although the trial court concluded that the frontage road operated in partial mitigation, nevertheless no consideration was given in the judgment to the question of mitigation of damages. In any event, we have here determined that the defendants' loss of access is non-compensable. Therefore, the agreement of counsel as to the difference in value is of no importance.

The judgment of the district court will be reversed, insofar as it awards the defendants compensation for loss of access.

It is so ordered.

COMPTON, C. J., and CHAVEZ and NOBLE, JJ., concur.

MOISE, J., dissenting.

MOISE, Justice (dissenting).

As pointed out by the majority, the problem here under consideration finds the courts in hopeless conflict. As I view the matter, the majority have failed to properly appraise these cases and accordingly have come to an erroneous conclusion.

The general problem is one with which courts have been wrestling with increasing frequency since the advent of the Federal Interstate and Defense Highway System in 1956, adopted by the Congress for the express purpose of accelerating or speeding up

8. Alldredge v. Alldredge, 1915, 20 N.M. 472, 151 P. 311;
In re Quantius' Will, 1954, 58 N.M. 807, 277 P.2d 306;
■

Griego v. Hogan, 1963, 71 N.M. 280, 377 P.2d 953.

the construction of the Federal-aid highway system. 23 U.S.C.A. § 101. This results from the fact that whereas limiting of access to heavily traveled roads was not unknown, the standards adopted for the Interstate System of highways built under the accelerated program require acquisition of access rights of lands abutting thereon. By Ch. 234, N.M.S.L.1957 (§§ 55–10–1 to 55–10–10, N.M.S.A.1953) our legislature provided for construction of controlled-access roads and for the acquisition of rights of access, air, view and light. § 55–10–5, N.M.S.A.1953.

As late as the end of 1961, in an article entitled, "Frontage Roads: To Compensate or Not to Compensate" appearing in 56 Northwestern University Law Review, at page 587, it is stated that only ten courts had passed on the general question of whether compensation should be paid to the owner of property left abutting on a frontage road, and that the decisions from these ten states fall into three categories: (1) the loss resulting from being placed on a frontage road should be compensated in eminent domain with the fact of the frontage road being considered in mitigation of the loss suffered; (2) the result reached in (1) is correct only if there is also a compensable taking of land; (3) no compensation should be paid whether land is taken or not.

The cases cited as coming to conclusion (1) that compensation must be paid whether land is taken or not are People v. Ricciardi, 23 Cal.2d 390, 144 P.2d 799; Franks v. State Highway Commission, 182 Kan. 131, 319 P.2d 535, and McMoran v. State, 55 Wash.2d 37, 345 P.2d 598. Cited as supporting rule (2) which limits compensation to situations where there has been a taking of land as well as placing the property on a frontage road are State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988; Mississippi State Highway Commission v. Finch, 237 Miss. 314, 114 So.2d 673. Holding that no compensation is due under rule (3) are Arkansas State Highway Commission v. Bingham, 231 Ark. 934, 333 S.W.2d 728; Selig v. State, 10 N.Y.2d 34, 217 N.Y. S.2d 33, 176 N.E.2d 59; Darnall v. State (S.D.1961) 108 N.W.2d 201; State ex rel. Merritt v. Linzell, 163 Ohio St. 97, 126 N.E. 2d 53; Nick v. State Highway Comm., 13 Wis.2d 511, 109 N.W.2d 71. The majority opinion recognizes this same classification of the decisions, and cites the same cases in support. In addition, I would call attention to the following cases involving the same general questions, some of which are cited in the footnotes to the opinion: Blount County v. McPherson, 268 Ala. 133, 105 So. 2d 117; Florida State Turnpike Authority v. Anhoco Corporation (Fla.1959) 116 So. 2d 8; Iowa State Highway Comm. v. Smith, 248 Iowa 869, 82 N.W.2d 755, 73 A.L.R.2d 680; In re Appropriation of Easements for Highway Purposes, 93 Ohio App. 179, 112 N.E.2d 411 (Note State ex rel.

Merritt v. Linzell, supra, cited in support of rule (3)); Department of Public Works and Buildings v. Anastopolo, 14 Ill.2d 216, 151 N.E.2d 337.

As is apparent from a reading of the cases cited, supra, there is no basis for any kind of a reconciliation between them. I note the comment made in the year 1906 that:

"The right of an owner of land abutting on public highways has been a fruitful source of litigation in the courts of all the states, and the decisions have been conflicting, and often in the same state irreconcilable in principle. The courts have modified or overruled their own decisions, and each state has in the end fixed and limited, by legislation or judicial decision, the rights of abutting owners in accordance with its own view of the law and public policy." Sauer v. City of New York, 206 U.S. 536, 548, 27 S.Ct. 686, 690, 51 L.Ed. 1176.

That the passage of more than fifty years since the quoted language was used has not altered the situation is evident. See, also, 3 Stanford Law Review 298.

The only authority in previous decisions of this court cited by the majority is the case of Board of County Commissioners of Santa Fe County v. Slaughter, 49 N.M. 141, 158 P.2d 859. They say that to allow compensation under the facts of this case would require that Slaughter be overruled. With this statement I disagree and I will undertake to demonstrate its fallacy.

In Slaughter, the following was said by the court:

"It seems to be the universal holding that where the taking of one's property is not involved and a highway is relocated and leaves a property owner completely off the new highway, but still with means of entrance and exit, that he has no right to damages for this reason alone."

It is true that a literal reading of this language used by the court, if entitled to general application, would deny appellees any recovery in the instant case. However, the Slaughter case did not involve interference or changing of access in any sense. A new road was built on a new location, leaving the property owner's improvements with the identical access to the road as it previously existed unchanged in the slightest. Accordingly, it is plain to see that the language used, insofar as appellant would apply it to the instant fact situation, was dicta at best. While in no sense desiring to in any way detract from the holding in Slaughter under the facts of that case, I am not impressed that the language quoted is controlling here.

Neither does the recognition that compensation is to be paid for loss of value to property because of taking or interfer-

ence with access mean that damages are being paid for circuity of travel or for loss because of diversion of the stream of traffic. Rather, it simply amounts to payment for the difference in the market value of the property before and after taking, or damaging access for public use. I do not see how anything different can be considered as compliance with the requirements of Art. II, Sec. 20, N.M.Const.

While I might agree that as suggested by the majority, there is no more right to damages resulting from diverting traffic by moving a right of way than by building a fence; I submit that the analogy as stated begs the question. As already pointed out, in Slaughter no change whatever was made in the access available to or from the property. There was no interference with access and no damage resulting directly or indirectly from this cause. Here, however, access is being interfered with. Because part of the loss of value results from inaccessibility is no reason to deny that there is compensable loss of value resulting from the interference with access. As suggested by my dissent in State ex rel. State Highway Commission v. Silva, 71 N.M. 350, 378 P.2d 595, loss of business resulting from diverting traffic could be eliminated as an element of damages by a proper instruction to the jury. To compare the facts here present with those ruled on in Slaughter is to be totally unrealistic and illogical.

Notice is also taken of Tomlin v. Town of Las Cruces, 38 N.M. 247, 31 P.2d 258, 97 A.L.R. 185, wherein a property owner was denied relief in equity to enjoin removal of signs placed by a public body directing traffic on a public street so as to by-pass petitioner's property. This holding was mentioned in the later case of Bennett v. Nations, 49 N.M. 389, 164 P.2d 1019, upholding a permanent injunction preventing a private individual from obstructing a public road thereby requiring an abutter thereon, in passing to and from his property, to travel more than a mile further over a circuitous and inconvenient route and then across a private land. In this latter case the court took note of the right of a property owner damaged by an obstruction materially interfering with or substantially impairing his right of access, at least if it depreciates the property, even if the obstruction is some distance from the property and does not completely cut off ingress and egress. Also in this case, a special right of access from property to a street was recognized in the following language quoted with approval from Young v. Rothrock, 121 Iowa 588, 96 N.W. 1105, 1108:

"* * * If, then, plaintiff has shown that the street which was obstructed led directly to his premises, and that the obstruction interfered with his access thereto, this is a sufficient showing of special damages to authorize him to maintain the suit. There is

no difficulty with the rule, although its application is not always easy. Plaintiff has shown that, if deprived of the use of First street, he is compelled to go several blocks out of his way to reach the premises owned by him, which abut on the street, and are in the same block as defendants' icehouse, and that First street gives him the only reasonable access to his property. This is a sufficient basis for his action."

In our most recent pronouncement in Board of County Comm'rs of Lincoln County v. Harris, 69 N.M. 315, 366 P.2d 710, we held that an owner of property abutting on a paved highway was entitled to damages when his property was depreciated in value by a material change in grade of the highway, resulting in a situation where ingress and egress to the property was thereby made difficult or inconvenient. Implicit in this holding is a determination that the owner of land abutting on a street or highway has a property interest over the street to and from his property or, as sometimes said, a right of ingress and egress to and from the property. This right has been described as being in the nature of an easement in the abutting street. Bacich v. Board of Control of California, 23 Cal.2d 343, 144 P.2d 818; Rose v. State, 19 Cal. 2d 713, 123 P.2d 505, quoted on another point in Harris, supra, 69 N.M. at 319, 366 P.2d at 713; Lewis, Eminent Domain (3rd Ed.) 177, § 120; 2 Nichols, Eminent Domain (3rd Ed.) § 6.444. This is necessarily true since the right to recover in the case turned on whether property had been taken or damaged.

The majority dispose of Harris with the casual remark that it related "to a change of grade as it affected access and is not in point under the facts of this case." They do not undertake to explain why one rule is applicable when access is affected by a change of grade, and another rule comes into play when access is affected by some other means, as for example erecting a steel wire fence between a road and property which was formerly freely accessible thereto. I submit there is no difference in the results so far as the value of the owner's property is concerned, and there is no logical reason for a different rule.

Similarly, the majority suggest one rule if access is completely cut off, as was true in New Mexican Railroad Co. v. Hendricks, 6 N.M. 611, 30 N.M. 901, and another where it is only partially cut off. Again, I submit that the difference is in degree only and not in principles involved, and the distinction attempted is not reasonable. They overlook that Art. II, Sec. 20, N.M.Const., provides that "[p]rivate property shall not be taken *or damaged* for public use without just compensation." Damaging requires just compensation just as surely as a total taking.

The attempted distinction of Bennett v. Nations, 49 N.M. 389, 164 P.2d 1019, is

wholly unrealistic. My reasoning in this regard is set out at length in my dissent in State ex rel. State Highway Commission v. Silva, supra. I do not repeat what I there said in the interest of brevity.

I also find myself in disagreement with the interpretation placed by the majority in what they describe as the Access Condemnation Statute (§§ 55–10–1 to 55–10–10, N.M.S.A.1953). If it were not intended to be mandatory why was it passed at all? If it is to be applied only where property is totally deprived of access why was language to this effect not used? Certainly, some test is necessary to determine when the act applies. The majority suggest none, while conceding a right to compensation for partial deprivation of access in certain cases. I submit that the passage of this legislation amounts to a legislative determination that property owners are entitled to compensation for the reduction in value of property resulting from either a taking or a substantial interference with access. See Smith v. State Highway Commission, 185 Kan. 445, 447, 346 P.2d 259. Compare State ex rel. State Highway Commission v. City of Albuquerque, 67 N.M. 383, 355 P. 2d 925.

As already noted, the cases in the various jurisdictions, while being distinguishable one from another because of slight differences in fact situations present, cannot be truly reconciled. The question presented is one of principle. On one side we find a citizen's investment in property duly protected from the sovereign by the provision of the constitution requiring that his "property shall not be taken or damaged for public use without just compensation." Art. II, § 20, N.M.Const. On the other hand, we are faced with an argument of appellant which is best stated in the following, quoted from 56 Northwestern University Law Review 587, 598:

> "The decline in the market value of the property results from the loss of the potential to exploit commercially the express traffic lanes and the diversion of the express traffic away from the pavement adjoining his land. What he has lost is the value of 'frontage' on a heavily trafficked road. This is the same sort of loss that is generally encompassed within the doctrine of circuity of travel. Moreover, what he is losing, in fact, is the benefit—entirely unearned by him—to his land of the commercially exploitable proximity of heavy traffic. Since he has no right to this benefit and has done nothing to create it, he should have little cause to complain at losing it."

This argument is followed by pointing out that the state may do one of two things, either of which would be less desirable from the property owner's standpoint: (1) condemn the abutter's entire right of access and build no frontage road, or (2) build the free way or non-access road on an entirely

new alignment. It is suggested that the first alternative will be adopted when money can be saved through paying for access rather than spending for construction of a service road and at the same time having to pay for interference with access. It is noted that the second alternative would be even more unsatisfactory to the property owner because he would then be entitled to no damages while being hurt just as badly if not worse. The author of the note then suggests that the issue is one of whether "the abutter's loss should be borne by him or by the community-at-large" and that in arriving at a decision on the issue the courts should recognize the issues noted above and should "not simply rely on pat statements of what constitutes an eminent domain or a police power action, or on an unquestioning acceptance of cases decided under different factual conditions."

I propose to follow this suggestion and I start by undertaking an analysis of the language quoted above. First, I would express disagreement with the statement that what the property owner is "losing, in fact, is the benefit—entirely unearned by him—to his land of the commercially exploitable proximity of heavy traffic." It seems to me that what he is losing is an investment made in the confidence that it would be protected by government and not seized without payment by the state as might be expected under a dictatorship. Protection of his property ownership is what our American and New Mexico constitutions guarantee him. Also, I think benefits resulting from wise investment of capital should not be considered as unearned any more than are the fruits of a man's labor. The strength of this nation has resulted from its espousal of the free enterprise system. The right to profit from investment is implicit. "Frontage" is a term which has a precise meaning in the business community, and is a commodity which is bought and sold every day. I would repeat that in making the investment the property owner has done something to entitle him to consideration and has earned a right to the fruits thereof and to continue without undue interference in the legitimate quest of a profit. He does have cause to complain if he loses his investment through seizure or usurpation without compensation.

It is appropriate at this point to quote the language of that eminent economist, Henry Haslett, in a paper delivered to the New Jersey Bar Association in 1951, entitled "Capitalism and Our Economic Goals."

"* * * The outstanding merit of the free enterprise system is precisely that it is free. It is a system of free voluntary economic relations among individuals. It is the precise opposite of the coercive socialistic system. Under such a system, man is not only stimulated to give his greatest exertions to produce the maximum income

and volume of goods for himself and his family, but his energies are released in all directions. Nothing awakens the spirit of man, nothing liberates his spiritual forces, like freedom.

"For make no mistake about it: economic freedom is an inseparable part of freedom. You cannot have spiritual freedom with economic slavery. When men are economic serfs of the state, they have no real freedom of thought, freedom of speech, or freedom of religion. When they depend economically on the rulers of the state, they must curry favor with those rulers, even if this means, as in Russia, the most abject and loathesome servility."

Likewise, I am not impressed that the property owner should be concerned with the alternatives suggested whereby he would end up a bigger loser. I do not doubt that when appellant determines that it is more proper or economical to condemn all access or to lay out its roads on an entirely new right-of-way, it will do so. However, I cannot believe that a responsible public body such as the appellant would enter on a program of this sort without considering the loss and waste that would result from by-passing existing improvements. In this connection, it is interesting to observe that in 56 Northwestern University Law Review 587, 600, it is pointed out that the courts of only five states out of ten that have considered the problem have held that compensation had to be paid for interference with access. At the same time, note is taken of the policy of 22 states, or 51% of those responding to a questionnaire circulated by the writer of the article, which paid for access when property formerly abutting on a highway was placed on a service road.

In my view, the conclusion reached in the article and advanced by the majority that if property is left with access to and from a service road, damages suffered should not be compensable, is highly questionable.

The problem, as I see it, is to determine if the situation presented in the instant case more nearly approximates that considered in Slaughter, supra, or in Harris, supra. In Slaughter, access to and from the old road was in no way altered or interfered with. In Harris, access was made more difficult or inconvenient through change of grade. Here, it was through limitation of means of getting to and from the traveled highway. I conclude that the rule in Harris is the more appropriate, and that compensation should be paid if access is made materially more difficult or inconvenient.

The majority state that appellees have a right of access to the public road system, but not necessarily to the express portions thereof. Also, that any loss in land value resulting from reasonable circuity of travel which may be imposed is not compensable.

The question which they do not answer is by what method do they determine that an abutting landowner who has been deprived of direct access to the express portion of a highway, previously enjoyed by him, has or has not suffered compensable damages?

Also, how does the court determine that the circuity of travel resulting from any change in the access is reasonable or not?

To my way of thinking, the answer to both of these questions must be resolved by having the fact-finder determine as a question of fact if the access to the property has been made materially more difficult or inconvenient as we held in Board of County Comm'rs of Lincoln County v. Harris, supra. If it is determined that it has been, then the property owner is entitled to be paid the damages resulting therefrom. As noted by the majority, the parties stipulated that if damages are payable for interference with access, the property damages amounted to $44,120.00.

In the light of the determination by the majority that compensation would be payable if the interference with access results in unreasonable circuity of travel, I do not understand how they can conclude as a matter of law, as they apparently do here, that the appellees are not entitled to recover the stipulated amount of damage. I would affirm the judgment appealed from. I dissent from the contrary conclusion.